Rel: September 27, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

_____

### CR-2022-0684

_____

**Jesse Earl Scheuing**

**v.**

**State of Alabama**

**Appeal from Calhoun Circuit Court
(CC-09-426.60)**

COLE, Judge.

Jesse Earl Scheuing, an inmate on Alabama's death row, appeals the Calhoun Circuit Court's summary dismissal of his Rule 32, Ala. R. Crim. P., petition for postconviction relief.

## Facts and Procedural History

"In August 2008, Scheuing was released on parole in the State of Georgia. He had been convicted of thefts of automobiles, breaking and entering into automobiles, escape, and being a felon in possession of a firearm. James Potts, a friend of Scheuing who lived in Alabama, went to Georgia and brought Scheuing to Alabama to stay with Potts and his wife, Tifani Kulp. On November 20, 2008, Scheuing failed to report to his parole officer as required by the terms of his parole.

"A couple of days before Thanksgiving, Scheuing stole a Kia Sportage automobile from Dean Jakiel's driveway. Jakiel had borrowed the Sportage from Lani Harrison, his daughter, and had parked it in his driveway, leaving the keys in the ignition. Also left in the Sportage was Jakiel's loaded, .38 caliber, five-shot, hammerless Smith and Wesson revolver and a box of ammunition for the gun. Within a day or two after stealing the Sportage, Scheuing abandoned the vehicle, but he kept the gun and ammunition that was in the vehicle.

"On November 26, 2008, the day before Thanksgiving, Potts took Scheuing to the home of Sean Cook, who was a friend of Potts. While there the three men smoked marijuana, and Cook sold a small amount of marijuana to Potts and Scheuing. That night, Potts, Kulp, and Scheuing gave Jeanette Rutledge, a friend of Potts and Kulp, a ride to her home. During the ride, Potts told her that he had a .38 caliber pistol in the car.

"Shortly after midnight on November 28, 2008, Scheuing decided to rob a store to get money to buy Potts an Xbox 360 video-game console and to get transportation to Grand Rapids, Michigan, where Scheuing wanted to meet a woman he had communicated with in an Internet chat room. Scheuing, Potts, and Kulp got into Potts's car, with Potts driving and Scheuing sitting in the back seat behind him. Sometime during the ride, Scheuing twice test fired the gun

2

he had stolen from the Sportage by shooting it out the car window; he did this to learn the gun's characteristics when fired. Also at some point during the night, Scheuing decided that he was going to kill whomever he robbed. The three drove around trying to find a place that would be easy to rob. They rejected most of the stores they saw because the clerks were enclosed in bullet-proof glass; they also rejected a Waffle House restaurant because it had too many customers. Scheuing finally decided that the target would be the Pak-a-Sak convenience store in Oxford. Although Potts and Kulp knew that Cook worked at the store as a cashier, they did not recognize him as the cashier when they drove by the store that morning.

"Potts parked the car a couple of blocks behind the Pak-a-Sak store. Scheuing walked to the store; he had the .38 caliber pistol in the back pocket of his pants. When Scheuing walked up to the store, Cook, who had to push a button to allow someone to enter the store, recognized Scheuing and allowed him in. Scheuing briefly spoke with Cook before asking where the restroom was. Scheuing had planned to put on a hockey mask he had with him while in the restroom, but, because Cook had recognized him, Scheuing decided not to use the mask. There were three customers in the store when Scheuing first entered, so he went into the restroom and waited until he heard them leave. After leaving the restroom, Scheuing walked to the counter where he talked with Cook about various topics. As they spoke about marijuana and the 'munchies' (State's Exhibit 96), Scheuing said that he was hungry and walked to the candy aisle. There, where Cook was unable to see what Scheuing was doing, Scheuing moved the .38 caliber pistol from his pants pocket to his coat pocket. With his hand in the coat pocket containing the pistol, Scheuing then walked back to the counter and continued speaking with Cook. Cook turned his head, looking out the window at a passing car; Scheuing pulled out the gun, and, when Cook turned back toward Scheuing, Scheuing shot him in the head. Scheuing then took the cash-register drawer and ran out the

3

door. He went back to the car and told Potts and Kulp that he had shot Cook. The three returned to Potts's home where Scheuing and Potts took the money from the cash-register drawer. The two men then took the cash-register drawer to a remote road where they cleaned their fingerprints from the cash-register drawer and then abandoned it.

"A short time after Scheuing left the store, Mary De La Zerda, a regular customer of the Pak-a-Sak store and an acquaintance of Cook's, arrived there. When she first entered the store, De La Zerda called for Cook because she did not see him. After getting no response from him, she noticed that the counter area was in disarray. De La Zerda again called for Cook and, receiving no response, walked behind the counter where she found him lying on floor. She then went outside and telephoned emergency 911.

"Officer Jake Durham of the Oxford Police Department was dispatched to the Pak-a-Sak store in response to the 911 call and was the first officer to arrive on the scene. After speaking with De La Zerda, Officer Durham entered the store with Officer Eric Hood and Officer Jamie Clark. Once inside, Officer Durham noticed that the cash-register drawer was missing and that 'items were out in the floor and strewn all over the place.' (R. 542.) After seeing Cook lying on the floor, Officer Durham alerted the other officers of the situation and had them separate. Officer Durham went 'straight through the building back toward the cooler and the bathroom areas' (R. 543) while Officer Hood went down the aisles and Officer Clark went behind the counter. Officer Clark saw Cook on the floor and noticed that '[h]e had some vomit around his mouth,' 'had a very gray complexion,' and 'appeared to be deceased.' (R. 635.) After not finding anyone else in the building, the officers went back outside, put up crime-scene tape, and secured the scene until someone from the investigation division of the police department arrived.

" ....

4

"After Scheuing and Potts disposed of the cash-register drawer, they went to a Walmart retail store where they purchased an Xbox 360, an Oblivion video-game cartridge for the video- game console, and a Playstation 2 video-game cartridge. The Playstation 2 cartridge was purchased so Scheuing would have something to play while Potts was playing Oblivion. While they were playing the games at Potts's house, Cook's teenage brother called Potts and threatened him, Kulp, and their son. Cook's brother made the threats because he believed that Potts had shot Cook.

"Due to the telephone call, Potts decided that they needed to get rid of the gun Scheuing had used to kill Cook. Scheuing, Potts, and Kulp got back into Potts's vehicle. While they were driving over a bridge, Scheuing threw the gun and the ammunition out of the passenger-side window and into a lake.

"At the Pak-a-Sak store, investigators contacted a manager who came in and retrieved video from the recording equipment at the store. The video revealed that an individual wearing a black and red coat and a black hat with a skull on top came into the store and, after walking around the store and speaking with Cook, pulled a gun out of his coat pocket and fired one shot at Cook. The man then picked up the cash-register drawer and ran out the door. Investigators were also able to obtain a video of a parking lot from another local business. That video showed the man who shot Cook getting out of the back seat of a car and then returning to the back seat of the same car a few minutes later.

"After dropping Kulp off at work, Scheuing and Potts went to the Greyhound bus station to purchase a ticket to Grand Rapids, Michigan. Because they had spent so much money on the video-game console and cartridges, Scheuing did not have enough money left to buy the bus ticket. Scheuing and Potts decided to stay away from Potts's home

for the day and that, in the evening, Potts would drop Scheuing off somewhere so Scheuing could steal a car to drive to Grand Rapids.

"Scheuing and Potts spent the day together, smoking marijuana and selling game cartridges and memory cards. After picking Kulp up from work, Potts and Kulp dropped Scheuing off at an abandoned mobile-home park. Scheuing stashed his belongings at the mobile-home park, then stole a GMC Yukon sport-utility vehicle that belonged to Jackie Williams. After returning to the mobile-home park, Scheuing retrieved his belongings and began his drive to Grand Rapids.

"Investigators were able to lift fingerprints from the counter of the Pak-a-Sak store, and one of those fingerprints belonged to Scheuing. After the story of the robbery-murder was televised during the local news, investigators received a tip informing them that Scheuing had been with Potts and of type of vehicle Potts drove. Based on that information, investigators went to Potts's mobile home and received permission from him to search his vehicle and mobile home. While searching Potts's car, investigators located a black and red jacket that matched the one worn by Scheuing when he shot Cook. Inside Potts's mobile home, investigators found a hat matching the one Scheuing had worn while he was inside the Pak-a-Sak store. They also located a receipt from Walmart store that was generated shortly after the robbery and murder. The investigators went to the Walmart store and were able to secure a video showing Potts and Scheuing in the store purchasing the Xbox 360 and video-game cartridges. The cash-register drawer was recovered when a citizen, who lived on a dead-end road, reported that he had found it near his driveway.

"When he got to Michigan, Scheuing went to meet the woman with whom he had communicated in the Internet chat room. She told him that because officers had contacted her and told her what he had done, she did not want anything to

6

do with him. Thereafter, Scheuing left. While still in Michigan, Scheuing swapped the license plate on the Yukon with one on a truck parked at a Days Inn hotel. He then drove west into Iowa.

"In Iowa, Scheuing stole Glenda Palmer's purse at a Walmart store but, before Scheuing was able to leave the parking lot, another person opened the passenger door of the Yukon and took back the purse. Scheuing ran out of gas on an interstate highway and began walking. While doing so, Scheuing convinced people to give him money on three separate occasions. On December 4, 2008, Scheuing used the money to buy a bus ticket to St. Louis, Missouri, which was as far as he could afford to travel with the money the people had given him, and he rented a room at the Red Carpet Inn motel in Knoxville, Iowa. The employee of the motel who rented the room to Scheuing had seen a story about him on the evening news and telephoned law enforcement. Scheuing was apprehended that afternoon.

"The next day, Special Agent Adam DeCamp and Special Agent Don Schnitker of the Iowa Division of Criminal Investigations interviewed Scheuing after he waived his Miranda rights. During the first part of the interview, Scheuing told Agent DeCamp and Agent Schnitker that he alone decided to rob a store to get money to buy Potts an Xbox 360 and to get money he could use to go to Michigan. He told the agents that he had taken Potts's vehicle without Potts's knowledge and had driven to the store. Scheuing detailed his time inside the Pak-a-Sak store, including how he had shot Cook, and told them that after he had disposed of the gun, ammunition, and cash-register drawer, he went back to Potts's house where he woke up Potts and told him that he was giving the money to him as a gift without telling him its source. The two of them, Scheuing said, then went to a Walmart store where they bought the video-game console and video-game cartridges. Scheuing further stated that he told

7

Potts what he had done to get the money only after Cook's brother had threatened Potts.

"During a break in the interview, the agents contacted investigators in Alabama and relayed to them the story Scheuing had given. When the interview resumed, the agents confronted Scheuing with the fact that they knew he was not telling the truth. Scheuing then told the truth about Potts's involvement in the crime.

"Following his extradition back to Alabama, Officer Michael Kane of the Weaver Police Department spoke with Scheuing about the theft of the Yukon. After he had executed a waiver-of-rights form, Scheuing wrote a statement for Officer Kane. In his statement Scheuing wrote that, around 8:00 p.m. on an 'unknown date,' he stole a silver Yukon and drove to Grand Rapids, Michigan. (State's Exhibit 34.) He further wrote that he then drove to Iowa where he 'eventually ran out of gas and left the vehicle on the entry ramp to the interstate.' (State's Exhibit 34.) Scheuing also wrote that, before he had left Calhoun County, Alabama, he had taken the Yukon to an abandoned mobile-home park to get clothes he had left. In the mobile-home park, he left 'most of the personal effects' that had been in the Yukon. (State's Exhibit 34.) Scheuing concluded the statement by writing that he had 'donated the clothes in the vehicle to Mel Trotters (sic) ministries.' (State's Exhibit 34.)

"Officer Kane informed Lieutenant Charles Plitt of the Weaver Police Department of the information Scheuing had provided. Lt. Plitt went to a vacant mobile-home park in Weaver where the remains of an abandoned mobile home still stood. This place was known to him as a place where people hid and disposed of stolen property. At the driveway of that mobile home, he found Williams's purse and other items.

" ....

8

"The autopsy of Cook's body was performed by Dr. Valerie Green, a state medical examiner with the Alabama Department of Forensic Sciences. Dr. Green determined that Cook had a gunshot entrance wound 'right in the center of the forehead.' (R. 596.) … She concluded that the cause of death was the 'gunshot wound to the head' and that the manner of death was homicide. (R. 620.)

"The bullet was examined by Dancy Sullivan, a forensic scientist with the Alabama Department of Forensic Sciences. Based on her examination of the bullet, Sullivan concluded that the 'bullet was a .38 caliber class bullet loaded in [a] .38 Special caliber cartridge[].' (R. 816.) Sullivan expected that the bullet would have been fired by a 'Smith & Wesson or similar .38 Special caliber firearm[] or Ruger, Smith & Wesson, Taurus, or similar .357 caliber firearm[].' (R. 816.)"

Scheuing v. State, 161 So. 3d 245, 252-57 (Ala. Crim. App. 2013) (footnotes omitted).

In March 2009, a grand jury indicted Scheuing for capital murder for killing Cook during the course of a first-degree robbery, a violation of § 13A-5-40(a)(2), Ala. Code 1975, and for first-degree theft of the sport-utility vehicle, a violation of § 13A-8-3, Ala. Code 1975. Following his September 2010 trial, the jury found Scheuing guilty of both offenses. As to his capital-murder conviction, the jury -- after unanimously finding beyond a reasonable doubt the existence of one aggravating circumstance

9

-- recommended by a vote of 10 to 2 that Scheuing be sentenced to death.[1] The trial court followed the jury's recommendation and sentenced Scheuing to death. As to his theft conviction, the trial court sentenced Scheuing, as a habitual felony offender, to 60 years' imprisonment.

On direct appeal, this Court affirmed Scheuing's convictions and sentences. See Scheuing, 161 So. 3d 245. After the Alabama Supreme Court denied his petition for a writ of certiorari, this Court issued a certificate of judgment on September 19, 2014. On September 15, 2015, Scheuing timely filed a Rule 32 petition challenging his convictions and sentences.

Over the next five years, Scheuing amended his petition three times. The State moved to dismiss his petition and each amendment thereto. On April 1, 2022, the circuit court issued a 65-page order dismissing Scheuing's petition. Scheuing then moved the circuit court to

---

[1] This Court's opinion on direct appeal says that the jury "recommended, by a vote of 10 to 2, that [Scheuing] be sentenced to life in prison without the possibility of parole." Scheuing, 161 So. 3d at 252. The record on direct appeal (of which we take judicial notice of in this case), however, shows that the jury recommended that Scheuing be sentenced to death by a vote of 10 to 2. (See Record in CR-10-1454, C. 5, 79, and 96.)

reconsider its judgment. The circuit court did not rule on Scheuing's motion. This appeal follows.

## Standard of Review

It is well settled that a circuit court may summarily dismiss a Rule 32 petition pursuant to Rule 32.7(d), Ala. R. Crim. P.,

> "[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings...."

See also Hannon v. State, 861 So. 2d 426, 427 (Ala. Crim. App. 2003); Cogman v. State, 852 So. 2d 191, 193 (Ala. Crim. App. 2002); Tatum v. State, 607 So. 2d 383, 384 (Ala. Crim. App. 1992). When this Court reviews a circuit court's summary dismissal of a postconviction petition, the standard we use "'is whether the [circuit] court abused its discretion.'" Lee v. State, 44 So. 3d 1145, 1149 (Ala. Crim. App. 2009) (quoting Hunt v. State, 940 So. 2d 1041, 1049 (Ala. Crim. App. 2005)). If the circuit court bases its decision on a "cold trial record," however, we apply a de novo standard of review. Ex parte Hinton, 172 So. 3d 348, 353 (Ala. 2012). "[W]hen reviewing a circuit court's rulings made in a

postconviction petition, we may affirm a ruling if it is correct for any reason." <u>Bush v. State</u>, 92 So. 3d 121, 134 (Ala. Crim. App. 2009).

As explained below, the circuit court summarily dismissed some of Scheuing's claims because they were without merit or because they simply failed to state a claim for relief. Some of Scheuing's claims, however,

> "were summarily dismissed based on defects in the pleadings and application of the procedural bars in Rule 32.2, Ala. R. Crim. P. When discussing the pleading requirements for postconviction petitions, we have stated:
>
>> "'The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). <u>See</u> <u>Bracknell v. State</u>, 883 So. 2d 724 (Ala. Crim. App. 2003).'
>
> "<u>Hyde v. State</u>, 950 So. 2d 344, 356 (Ala. Crim. App. 2006).
>
>> "'"Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief." <u>Boyd v. State</u>, 746 So. 2d 364, 406 (Ala. Crim. App. 1999). In other words, it is not the pleading of a conclusion "which, if true, entitle[s] the petitioner to relief." <u>Lancaster v. State</u>, 638

12

So. 2d 1370, 1373 (Ala. Crim. App. 1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided under Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts.'

"Boyd v. State, 913 So. 2d 1113, 1125 (Ala. Crim. App. 2003). '[T]he procedural bars of Rule 32[.2, Ala. R. Crim. P.,] apply with equal force to all cases, including those in which the death penalty has been imposed.' Burgess v. State, 962 So. 2d 272, 277 (Ala. Crim. App. 2005)."

Washington v. State, 95 So. 3d 26, 38-39 (Ala. Crim. App. 2012). Furthermore, "the plain-error standard of review does not apply when an appellate court is reviewing the denial of a postconviction petition attacking a death sentence." James v. State, 61 So. 3d 357, 362 (Ala. Crim. App. 2010) (citing Ex parte Dobyne, 805 So. 2d 763 (Ala. 2001)).

Before we turn to Scheuing's arguments on appeal, we note that the Alabama Rules of Appellate Procedure are clear: in his or her brief to this Court, an appellant must present this Court with an adequate argument "containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Rule 28(a)(10), Ala. R. App. P. As the State points out in its brief to this Court,

nowhere in Scheuing's brief to this Court does he actually address the circuit court's reasons for dismissing the claims he raised in his Rule 32 petition.[2] Instead, Scheuing merely restates the allegations that he raised in his petition. We have held that,

> "when a petitioner merely restates allegations that he or she raised in a Rule 32 petition without explaining to this Court how the circuit court erred by providing this Court with citations to legal authority supporting those arguments, that petitioner has not satisfied Rule 28(a)(10), Ala. R. App. P., and his or her claims are deemed abandoned and waived. See, e.g., Calhoun v. State, 261 So. 3d 457, 472-73 (Ala. Crim. App. 2016) (holding that Calhoun failed to 'adequately argue' his claims on appeal because he 'merely restate[d] these allegations from his petition,' argued that the allegations in his petition showed that his counsel was ineffective, and failed to cite 'legal authority to support these contentions')."

Travis v. State, [Ms. CR-18-0973, Mar. 24, 2023] ___ So. 3d ___, ___ (Ala. Crim. App. 2023). Although the State asserts on numerous occasions in its brief on appeal that Scheuing has waived his arguments by failing to comply with Rule 28(a)(10), Scheuing does not attempt to contest these assertions by the State in his reply brief. We address

---

[2]Scheuing mentions the circuit court's order only once in his brief. (See Scheuing's brief, p. 6 (noting in his "Statement of the Case" that the circuit court dismissed his petition on April 1, 2022).)

14

Scheuing's arguments on appeal including addressing when his claims fail to satisfy Rule 28(a)(10), Ala. R. App. P.

## Discussion

On appeal, Scheuing argues that his counsel were ineffective during the guilt and penalty phases of his trial. (Scheuing's brief, pp. 9-51.) Scheuing also argues that the trial court failed to find his "severe mental illness as a mitigating circumstance and to consider other mental-health evidence as mitigating" and that the trial court failed "to consider [his] youth and undeveloped brain as nonstatutory mitigating factors when weighing … the aggravating circumstances of the crime against [his] mitigating circumstances." (Scheuing's brief, pp. 51-52.) Finally, Scheuing raises claims concerning the application of the death penalty to him. (Scheuing's brief, pp. 53-76.) We address each argument in turn.

## I.  Ineffective Assistance of Counsel

"As we have often stated:

> "'"To prevail on a claim of ineffective assistance of counsel, the petitioner must show (1) that counsel's performance was deficient and (2) that the petitioner was prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

15

"'"'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be

16

considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'

"'"Strickland, 466 U.S. at 689, 104 S. Ct. 2052.

"'"'[T]he purpose of ineffectiveness review is not to grade counsel's performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S. Ct. [2052] at 2065 [80 L. Ed. 2d 674] [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir. 1992) ("We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately."). We recognize that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." Strickland, 104 S. Ct. at 2067. Different lawyers have different gifts; this

17

fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or "what is prudent or appropriate, but only what is constitutionally compelled." <u>Burger v. Kemp</u>, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987).'

"'"<u>Chandler v. United States</u>, 218 F.3d 1305, 1313-14 (11th Cir. 2000) (footnotes omitted).

"'"...."

"'....

"'We also recognize that when reviewing claims of ineffective assistance of counsel "the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." <u>Strickland v. Washington</u>, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).'

"<u>Marshall v. State</u>, 182 So. 3d 573, 582-83 (Ala. Crim. App. 2014)."

<u>Peraita v. State</u>, 386 So. 3d 799, 829-30 (Ala. Crim. App. 2021).

Additionally, when a Rule 32 petition alleges that counsel was ineffective,

that claim must be sufficiently pleaded. We have summarized the

pleading standard for such claims as follows:

> "'In <u>Hyde v. State</u>, 950 So. 2d 344 (Ala. Crim. App. 2006), this Court explained ... :
>
> > "'"The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one.... To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must 'identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' <u>Strickland v. Washington</u>, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694, 104 S. Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."
>
> "'950 So. 2d at 356.'

19

"Mashburn v. State, 148 So. 3d 1094, 1105-07 (Ala. Crim. App. 2013).  Even if a claim of ineffective assistance of counsel is sufficiently pleaded, however, counsel is not ineffective for failing to raise a meritless claim.  Carruth v. State, 165 So. 3d 627, 645 (Ala. Crim. App. 2014)."

Brooks v. State, 340 So. 3d 410, 442 (Ala. Crim. App. 2020).  With these principles in mind, we turn to Scheuing's claims of guilt-phase and penalty-phase ineffective assistance of counsel.

### I.A.  Guilt-Phase Claims

### I.A.1.

Scheuing first argues that his trial counsel were ineffective for "fail[ing] to move for dismissal [of his case] based on speedy trial grounds."  (Scheuing's brief, p. 13.)

In his third amended petition, Scheuing alleged that his counsel were ineffective for failing "to move for dismissal [of his case] based on speedy trial grounds."  (C. 839.)  Scheuing claimed that the 21-month delay between his pretrial detention and his trial was presumptively prejudicial; that the delay "was the result of actions taken by the prosecution" and "[t]he prosecution never explained the delay"; that he suffered prejudice because he experienced "stress and anxiety" during his pretrial incarceration and "lost contact with close friends who comprised

20

his support system," which, he says, "directly impacted his ability to defend himself" and that, if his counsel had acted effectively, he would have asserted his right to a speedy trial. (C. 840-41.) Scheuing also alleged that he was prejudiced by his counsel's failure to move to dismiss his case on speedy-trial grounds because, he said:

> "Had trial counsel moved to dismiss the case, there is a reasonable possibility that [he] would not have been convicted and sentenced to death. As discussed above, [he] had a strong case for dismissal based on speedy-trial grounds. If counsel had filed the motion, the Court would have granted it, and [he] would not have faced a trial, convictions, or a death sentence."

(C. 842.)

The circuit court dismissed this claim, finding that "Scheuing raised the issue underlying this ineffectiveness claim on direct appeal, and the Alabama Court of Criminal Appeals held that 'Scheuing has failed to establish that a violation of his right to a speedy trial occurred, much less that the circuit court committed plain error by failing to notice one.'" (C. 1221 (quoting Scheuing, 161 So. 3d at 291).) The circuit court further found that, although a finding of no plain error on direct appeal does not preclude Scheuing from arguing in his petition that his counsel's failure prejudiced him, Scheuing failed to sufficiently plead his claim and

21

failed "to plead any facts in his petition to dispute" this Court's holding on direct appeal. (C. 1222.)

In his brief on appeal, Scheuing reasserts the claim he raised in his petition without addressing the circuit court's basis for summarily dismissing his claim or explaining how the circuit court's decision is incorrect. Because Scheuing failed to present this Court with any argument showing how the circuit court erred when it summarily dismissed this claim of ineffective assistance of counsel, Scheuing's argument on appeal does not comply with Rule 28(a)(10), Ala. R. App. P., and "'constitute[s] a waiver of the underlying postconviction claim.'" Wimbley v. State, 387 So. 3d 213, 231 (Ala. Crim. App. 2022) (quoting Woodward v. State, 276 So. 3d 713, 746 (Ala. Crim. App. 2018)).

Even if Scheuing had not waived this argument, the circuit court properly dismissed this claim. As the circuit court explained in its order dismissing Scheuing's petition, this Court, in Scheuing's direct appeal, addressed the merits underlying his claim that his counsel were ineffective for failing to move to dismiss his case on speedy-trial grounds.

In his direct appeal, Scheuing argued, just as he does in his third amended petition, "that the 'delay of over 21 months in the prosecution

22

of Mr. Scheuing denied him his right to a speedy trial.'" Scheuing, 161 So. 3d at 288. Scheuing claimed in his direct appeal that the length of pretrial delay was presumptively prejudicial and that he suffered prejudice from the delay because he had "suffered anxiety and emotional stress." Id. at 288-91. This Court, reviewing his claim for plain error under Rule 45A, Ala. R. App. P., examined the factors set out in Barker v. Wingo, 407 U.S. 514 (1972), and rejected Scheuing's speedy-trial argument.

This Court held that, contrary to Scheuing's argument on appeal, a 21-month delay in a capital-murder trial is not "presumptively prejudicial." Scheuing, 161 So. 3d at 288 ("Although Scheuing argues that the 21-month delay between his arrest and the beginning of his trial is presumptively prejudicial, this Court does not agree."). Thus, there was no violation of Scheuing's right to a speedy trial. This Court nonetheless addressed the remaining Barker factors and held that the record showed that the 21-month delay "was neither deliberately nor negligently caused by the State"; that Scheuing never asserted his right to a speedy trial; and that, "[a]lthough Scheuing asserts that, due to the delay, 'he suffered from anxiety and emotional stress' …, no evidence

supporting that assertion appears in the record" and, thus, he "failed to establish prejudice as a result of any delay." Id. Ultimately, this Court concluded that "Scheuing has failed to establish that a violation of his right to a speedy trial occurred, much less that the circuit court committed plain error by failing to notice one." Id. at 291. In other words, this Court held that there was no error, much less plain error, resulting from the delay between Scheuing's arrest and his trial.

Because this Court held in Scheuing's direct appeal that a 21-month delay between an arrest and a trial in a capital-murder case is not presumptively prejudicial, and, that if it were, the remaining Barker factors do not establish a speedy-trial violation, the circuit court did not err when it summarily dismissed this claim. See, e.g., Carruth v. State, 165 So. 3d 627, 645 (Ala. Crim. App. 2014) (holding that counsel "were not ineffective for failing to raise a baseless objection").

### I.A.2.

Next, Scheuing argues that his counsel were ineffective for "fail[ing] to challenge for cause jurors who testified that they could not give undivided attention to [his] trial proceedings." (Scheuing's brief, p. 14.)

In his third amended petition, Scheuing raised this same claim and specifically asserted that veniremembers C.W. and M.Z. both "indicated that they would not be able to give their complete attention to the evidence offered in this capital case," that his trial counsel "did not move to strike either veniremember for cause," and that both C.W. and M.Z. "ended up serving on the jury." (C. 842-43.)

The circuit court summarily dismissed Scheuing's claim for two reasons. First, the circuit court found that Scheuing had argued in his direct appeal that "the circuit court erred by failing to sua sponte remove veniremembers C.W. and M.Z." and this Court held

> "that the statutory grounds for which a veniremember may be struck for cause 'do not include a juror who would not be able to give his complete attention to the trial' and that '[t]he veniremember's responses do not appear to rise to the level of a strike for cause, and the circuit court did not commit plain error by failing to remove them without any motion from defense counsel.'"

(C. 1223-24.) The circuit court held that, because "the veniremembers' responses would not have supported a challenge for cause, Scheuing's trial counsel were not ineffective for failing to make one." (C. 1224.)

Second, the circuit court found that Scheuing's claim that C.W. and M.Z. both had served on his jury was "directly refuted by the record"

25

because the "State used its sixth peremptory strike to remove M.Z. from the jury, and ... Scheuing's trial counsel used its twelfth peremptory strike to remove C.W. from the jury." (C. 1224 (citations omitted).) The circuit court held that, because "the record proves that neither C.W. nor M.Z. actually served on the jury, Scheuing cannot prove that his counsel's performance was deficient and that he was prejudiced by his counsel's failure to request that they be struck for cause." (C. 1224.)

The totality of Scheuing's argument on appeal is as follows:

"During voir dire, veniremembers C.W. and M.Z. both responded affirmatively to the following inquiry:

"'You may be sitting here thinking, hey, what's happening with my business or my family or any other number of issues. And you may not be able to give me or the defense your complete attention. I won't ask you why, but is there anybody that fits that category, there's other things that you need to be doing other than sitting here?'

"(R. 405.)

"Even though they indicated that they would not be able to give their complete attention to the evidence offered in this capital case, defense counsel did not move to strike either veniremember for cause. Both veniremembers served on the jury. Applicable professional standards also reinforce trial counsel's obligation to strike 'prospective jurors who are unable to give meaningful consideration' to the evidence presented at trial. ABA Guideline 10.10.2.

"A criminal defendant in a jury trial is entitled to a fair and impartial jury. (Morgan v. Illinois, 504 U.S. 719 (1992), Duncan v. Louisiana, 391 U.S. 145 (1968).), see also Irvin v. Dowd, 366 U.S. 717, 722 (1961)."

(Scheuing's brief, pp. 14-15.)

In making his argument on appeal, Scheuing merely reiterates the claim he raised in his amended Rule 32 petition without addressing the circuit court's judgment or explaining how the circuit court erred when it dismissed this claim and ignoring the circuit court's finding that M.Z. and C.W. did not serve on the jury. In fact, as the State correctly points out in its brief on appeal, Scheuing "does not even mention the court's final order ... or cite this Court to the portion of the appellate record where the court addressed this claim." (State's brief, p. 12.) Again, this Court has held that similar failures of argument render an appellate brief noncompliant with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Woodward v. State, 276 So. 3d 713, 746 (Ala. Crim. App. 2018) (holding that Woodward's argument on appeal did not satisfy Rule 28(a)(10), Ala. R. App. P., and was, therefore, deemed waived when he "reassert[ed] this claim from his petition, but he ma[de] no argument regarding why he

27

believe[d] the circuit court's findings were incorrect"). Because Scheuing's argument does not comply with Rule 28(a)(10), Ala. R. App. P., he has waived his argument.

Even if Scheuing had not waived this claim, however, the circuit court properly dismissed this claim. As the circuit court noted in its order dismissing this claim, this Court in Scheuing's direct appeal concluded that neither C.W.'s nor M.Z.'s responses during voir dire "rise to the level of a strike for cause, and the circuit court did not commit plain error by failing to remove them without any motion from defense counsel." Scheuing, 161 So. 3d at 291. Although "'a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel,'" "it is 'the rare case in which the application of the plain-error test and the prejudice prong of the Strickland test will result in different outcomes.'" Bohannon v. State, [Ms. CR-21-0148, Aug. 18, 2023] ___ So. 3d ___, ___ (Ala. Crim. App. 2023) (quoting Ex parte Taylor, 10 So. 3d 1075, 1078 (Ala. 2005)). Although Scheuing alleged that his counsel were ineffective for failing to move to strike for cause C.W. and M.Z., Scheuing failed to plead any facts in his

petition to dispute this Court's holding on direct appeal that their responses did not rise to the level to support a strike for cause; thus, he failed to show why this claim was one of the "rare" claims mentioned in Ex parte Taylor, supra, where the application of the plain-error standard and the prejudice prong of Strickland will result in different outcomes. On appeal, he also failed to challenge the trial court's finding that neither of the complained-of prospective jurors served on the jury. If neither of the individuals served on the jury then Scheuing would be unable to establish any prejudice. Thus, the circuit court properly dismissed this claim, and Scheuing is not entitled to relief on this claim.

I.A.3.

Scheuing argues that his counsel were ineffective for "fail[ing] to challenge the prosecution's discriminatory peremptory strikes during jury selection" when the prosecution "improperly struck a disproportionate number of female venire members in violation of J.E.B. v. Alabama, 511 U.S. 127 (1994)." (Scheuing's brief, p. 15.)

In his third amended petition, Scheuing alleged that his counsel were ineffective for failing to raise an objection under J.E.B. v. Alabama, 511 U.S. 127 (1994), because, he said, the State "used sixty-eight percent

of its peremptory strikes to remove female veniremembers from the jury," "the group of women struck shared only their gender in common," and "the disparate treatment of men and women on the venire gave rise to an inference of discrimination." (C. 844-45.)

The circuit court summarily dismissed this claim because "Scheuing raised the issue underlying this ineffectiveness claim on direct appeal, and the Court of Criminal Appeals held that, under the circumstances, 'this Court cannot say that the State's use of 23 of 34 peremptory strikes to remove female veniremembers raises an inference of discrimination.'" (C. 1225.) The circuit court also found that Scheuing failed "to plead any specific facts in his petition that would call the Court of Criminal Appeals' holding into question." (C. 1225.)

The totality of Scheuing's argument on appeal is as follows:

"During the culpability phase, the State improperly struck a disproportionate number of female venire members in violation of J.E.B. v. Alabama, 511 U.S. 127 (1994). Where the Record establishes a prima facie showing of gender discrimination, a hearing must be held, and the prosecution must provide gender-neutral reasons for the strikes. See ibid; Ex parte Trawick, 698 So. 2d 162, 167-68 (Ala. 1997) (relevant factors to establish a prima facie case under Batson [v. Kentucky, 476 U.S. 79 (1986),] apply to claims of gender discrimination). No hearing was held because trial counsel failed to object. He lifted the burden from the state to present

gender-neutral reasons for its peremptory strikes. Eagle v. Linahan, 279 F.3d 926 (11th Cir. 2001).

"Here, the prosecution used sixty-eight percent of its peremptory strikes to remove female veniremembers from the jury, resulting in a jury that was thirty-three percent female despite women comprising nearly half the venire. This alone provided grounds for counsel to object based on an inference of discrimination. See Davis v. Ayala, 135 U.S. 2187, 2200-01 (2015), Miller-El v. Dretke, 545 U.S. 231, 240-41 (2005); see also Ex parte Branch, 526 So. 2d 609, 623 (Ala. 1987) (use of 67% of peremptory strikes against a particular group could raise an inference of discrimination). Trial counsel's failure to object constituted ineffectiveness in light of the State's intentional attempt to circumvent Mr. Scheuing's constitutional rights."

(Scheuing's brief, pp. 15-16.)

Scheuing merely recites the claim he raised in his amended Rule 32 petition without addressing the circuit court's judgment or explaining how the circuit court erred when it dismissed his claim. Again, Scheuing "does not even mention the court's final order ... or cite this Court to the portion of the appellate record where the court addressed this claim." (State's brief, p. 14.)

As the circuit court correctly noted in its dismissal of Scheuing's claim, this Court addressed the substantive issue underlying Scheuing's claim of ineffective assistance of counsel and held that Scheuing was "not entitle[d] … to any relief" on his J.E.B. claim because "this Court cannot

31

say that the State's use of 23 of its 34 peremptory strikes raises an inference of discrimination"; because Scheuing "has not established that the women struck by the State were heterogeneous"; and because he "failed to establish that the State treated men and women differently." Scheuing, 161 So. 3d at 285-87. Because this Court in Scheuing's direct appeal concluded that the exact arguments he says his counsel were ineffective for failing to raise at trial do "not raise an inference that the State used its peremptory strikes in a manner that discriminated against women," id., Scheuing's claim of ineffective assistance of counsel is without merit. Scheuing continues to rely upon an assertion that the percentage of women struck by the State was higher than the percentage of women in the venire, but "[t]his Court has repeatedly held that a prima facie case of discrimination under Batson [and J.E.B.] cannot be established on numbers alone." Largin v. State, [Ms. CR-20-0228, Dec. 16, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022).

Based on the foregoing, the circuit court did not err when it summarily dismissed this claim.

## I.A.4.

Scheuing argues that his counsel were ineffective for "fail[ing] to object to the State's characterization that it was representing the victim and his family, which it repeated throughout the proceedings." (Scheuing's brief, p. 16.)

In his third amended petition, Scheuing alleged that "throughout the proceedings" the State "repeatedly mischaracterized its role and the nature of the proceedings by asserting that it represented the victim," and his counsel failed to object to the State's "improper assertions." (C. 850.) Specifically, Scheuing alleged that the State made such an improper assertion on three occasions: (1) during voir dire when it told a jury panel that it "represent[s] the victims, Sean Cook and Jacqueline Williams" (Record in CR-10-1454, R. 220); (2) during voir dire when it told a different jury panel that it "represent[s] Sean Cook who can't be here because he's dead" and that it is "his voice and [it's] going to represent him throughout this trial" (Record in CR-10-1454, R. 294); and (3) during voir dire when it told yet another jury panel that it

> "represent[s] Sean Cook. And he's dead, and he can't be here today. So I'm going to ask every question I can legally ask to find out everything I can find out about you so that when I put you in the box I can assure his mom that he's going to get a

33

fair trial, that his alleged murderer is going to have a fair jury listening to the evidence."

(Record in CR-10-1454, R. 381.) Scheuing claimed that he was prejudiced by his counsel's failure to object to the complained-of statements because the "statements were highly prejudicial" and

> "gave the jury an inaccurate perception of the prosecution's relationship to the victim, coloring with improper sympathies and passions the lens through which the jury viewed all aspects of the trial. Had trial counsel objected, the trial court would have prevented the prosecution from misrepresenting its role, and the prosecution would have been a normal litigant instead of a member of the victim's legal team. The jury would have viewed the case without the improper sympathies and passions associated with a victim; it would have been a detached, neutral decisionmaker instead. Given the dearth of information about [his] horrible childhood and the resulting mental-health problems that ensued, there is a reasonable likelihood that a detached, neutral decisionmaker would not have convicted him of capital murder or sentenced him to death."

(C. 851.)

The circuit court dismissed this claim because "he raised this underlying claim on direct appeal, and the Alabama Court of Criminal Appeals held that 'the record demonstrates that the prosecutor's references to representing and speaking for the victims were limited and brief' "; thus, this Court held " 'that the prosecutor's comments did not rise to the level of plain error.' " (C. 1161 (quoting Scheuing, 161 So. 3d at

34

287-88).) The circuit court, while acknowledging that "a finding of no plain error on direct appeal does not foreclose Scheuing from arguing that he was prejudiced by his trial counsel's failure to object to the prosecutor's comments," concluded that "Scheuing failed to plead any specific facts in his petition that, if true, would establish that his is a 'rare case.'" (C. 1161-62.)

On appeal, Scheuing does not challenge the circuit court's judgment. Rather, Scheuing's two-paragraph argument consists of a restatement of the allegations he raised in his petition with citations to two cases -- one being a citation to a concurring opinion -- that notes that a prosecutor represents the sovereign and not a party. (Scheuing's brief, pp. 16-17.) Like previous claims addressed above, Scheuing does not mention the circuit court's order as to this claim, nor does he make any argument as to why the circuit court erred when it summarily dismissed this claim. Again, this Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Woodward, 276 So. 3d at 746 (holding that Woodward's argument on appeal did not satisfy Rule 28(a)(10), Ala. R. App. P., and was, therefore, deemed waived

when he "reassert[ed] this claim from his petition, but he ma[de] no argument regarding why he believe[d] the circuit court's findings were incorrect"). Furthermore, Scheuing cites caselaw indicating that prosecutors represent the State, not the individual, but he does not provide this Court with argument that the assertions of the prosecutor were overarching during the trial or any caselaw indicating that the assertions in this case were sufficiently prejudicial to warrant relief. Because Scheuing's argument does not comply with Rule 28(a)(10), Ala. R. App. P., he has waived his argument.

Even had the argument not been waived, his claim is without merit. As the circuit court explained in its order dismissing this claim, this Court, on direct appeal, addressed the same complained-of comments underlying Scheuing's claim of ineffective assistance of counsel as follows:

> "In Johnson v. State, 120 So. 3d 1130 (Ala. Crim. App. 2009), this Court addressed a similar argument and stated:
>
>> "'This Court has held that a prosecutor's comments that he or she represented or spoke for the victim's family is not erroneous. "We have held that it is not reversible error for a prosecutor to suggest that he is speaking on behalf of the victim's family. See Slaton v. State, 680 So. 2d 879, 906-07 (Ala. Crim. App. 1995), aff'd, 680 So.

36

2d 909 (Ala. 1996), cert. denied, 519 U.S. 1079, 117 S. Ct. 742, 136 L. Ed. 2d 680 (1997)." Burgess v. State, 723 So. 2d [742] at 754 [(Ala. Crim. App. 1997)].'

"Johnson, 120 So. 3d at 1190. In Slaton, this Court instructed that it is not 'reversible error when the prosecutor briefly suggests that he is speaking on behalf of the victim's family.' Slaton v. State, 680 So. 2d 879, 906 (Ala. Crim. App. 1995) (citing Henderson v. State, 583 So. 2d 276, 286 (Ala. Crim. App. 1990)).

"In this case, the record demonstrates that the prosecutor's references to representing and speaking for the victims were limited and brief. This Court, therefore, holds that the prosecutor's comments did not rise to the level of plain error. See Rule 45A, Ala. R. App. P."

Scheuing, 161 So. 3d at 287-88.

Although this Court reviewed Scheuing's argument for plain error and held that Scheuing's claim did not rise of the level of plain error, this Court has held:

" '[A] determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel.' Ex parte Taylor, 10 So. 3d 1075, 1078 (Ala. 2005). However, it is 'the rare case in which the application of the plain-error test and the prejudice prong of the Strickland test will result in different outcomes,' Ex parte Taylor, 10 So. 3d at 1078, and this is not such a case."

Bohannon, ___ So. 3d at ____.

37

As this Court noted in Scheuing's direct appeal, the prosecutor's comments during voir dire were "limited and brief," and such comments are simply not reversible error. Thus, there was no basis for Scheuing's counsel to object to the complained-of comments because an objection would have been baseless. What is more, as the circuit court noted in its order dismissing this claim, Scheuing failed to plead any facts showing that this claim was one of the "rare" claims mentioned in Ex parte Taylor, supra, where the application of the plain-error standard and the prejudice prong of Strickland will result in different outcomes.

### I.A.5.

Scheuing argues that his counsel were ineffective for "fail[ing] to adequately investigate and present a defense during the culpability phase of [his] trial." (Scheuing's brief, p. 17.)

In his third amended petition, Scheuing alleged that his trial counsel "were deficient for failing to investigate the reasons that [he] committed the murder and ensured that he would be convicted." (C. 853.) According to Scheuing, Potts and Kulp "wanted to break away from their lives of drugs and crime to start a normal family" and they "needed help." (C. 853-54.) Scheuing alleged that Potts and Kulp had "tried to distribute

38

'crystal meth' and incurred a large debt to" Cook and that Cook "would not give the couple any more time to pay." (C. 854.) Scheuing said that he agreed to take on the couple's debt himself but he "could not make the money needed to pay the debt either." (C. 854.) So, he said, he "went to talk with Mr. Cook again, hoping that he would agree to more-reasonable repayment terms," but "Cook did not, so Mr. Scheuing shot him." (C. 854.) Scheuing alleged that, "to protect" Potts, "[h]e took the cash register to make it look like an open-and-shut murder during the course of a robbery" and "gave the money to the new family as a wedding gift and assured them that he would confess that he did it for a robbery if caught." (C. 854.) Scheuing alleged that his counsel "had no reasonable excuse to not investigate these details." (C. 855.) As for prejudice, Scheuing claimed that if "the jury understood the true reasons that [he] killed Mr. Cook and later confessed to it, they may have spent more than twenty-nine minutes deliberating his guilt." (C. 855.)

The circuit court summarily dismissed this claim as insufficiently pleaded, finding:

"First, Scheuing fails to assert in his petition that he ever told his trial counsel that his motive for murdering the victim was to help his co-defendants and not robbery. As such, Scheuing's counsel had no reason to think that his

39

motive for killing the victim was anything other than robbery. See James v. State, 61 So. 3d 357, 366 (Ala. Crim. App. 2010) (holding that James's trial counsel were not ineffective for failing to pursue a claim of self-defense because 'counsel had no reason to believe that the shooting was in self-defense because James did not tell his attorneys that he acted in self-defense').

"....

"Second, Scheuing failed to proffer in his petition what legal evidence his trial counsel could have presented during the guilt phase of trial to prove his murdering the victim was motivated by his desire to help his friends and not robbery. Even if Scheuing had proffered such evidence in his petition, he failed to state any rational reason why his counsel's performance would have been deficient and prejudicial because they did not present evidence showing that he murdered the victim because he would not agree to better terms for repaying a drug debt."

(C. 1228-29.)

On appeal, Scheuing merely repeats the allegations he made in his petition without mentioning the circuit court's final order as to this claim and without making any argument as to why the circuit court erred when it summarily dismissed as insufficiently pleaded. Again, this Court has held that similar failures of argument render an appellate brief noncompliant with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Woodward, 276 So. 3d at 746 (holding that Woodward's argument on appeal did not

40

satisfy Rule 28(a)(10), and was, therefore, deemed waived when he "reassert[ed] this claim from his petition, but he ma[de] no argument regarding why he believe[d] the circuit court's findings were incorrect"). Furthermore, Scheuing's argument to this Court included the vague assertion that his counsel should have interviewed "virtually everyone," and the only authority he cites stands only for the general proposition that counsel is required to investigate the case. Because Scheuing's argument does not comply with Rule 28(a)(10), he has waived his argument.

Even so, the circuit court correctly concluded that Scheuing's claim was insufficiently pleaded. This Court has held that

> "'[w]hile counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, "this duty only requires a <u>reasonable</u> investigation." <u>Singleton v. Thigpen</u>, 847 F.2d 668, 669 (11th Cir. (Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S. Ct. 822, 102 L. Ed. 2d 812 (1989) (emphasis added). See <u>Strickland</u>, 466 U.S. at 691, 104 S. Ct. at 2066; <u>Morrison v. State</u>, 551 So. 2d 435 (Ala. Cr. App. 1989), cert. denied, 495 U.S. 911, 110 S. Ct. 1938, 109 L. Ed. 2d 301 (1990). Counsel's obligation is to conduct a "substantial investigation into each of the <u>plausible</u> lines of defense." <u>Strickland</u>, 466 U.S. at 681, 104 S. Ct. at 2061 (emphasis added). "A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made." <u>Id.</u>, 466 U.S. at 686, 104 S. Ct. at 2063.'"

41

Broadnax v. State, 130 So. 3d 1232, 1247-48 (Ala. Crim. App. 2013)

(quoting Jones v. State, 753 So. 2d 1174, 1191 (Ala. Crim. App. 1999)).

Furthermore,

> "'[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions. See United States v. Decoster, [199 U.S. App. D.C. 359,] 372-373, 624 F.2d [196,] 209-210 [ (D.C.1976) ].'"

Broadnax, 130 So. 3d at 1248 (quoting Strickland, 466 U.S. at 691, 104

S. Ct. 2052) (emphasis added).

Here, although Scheuing alleged in his amended petition an

alternative reason as to why he shot and killed Cook, Scheuing failed to

allege either that he told his trial counsel about his "real" reason for

killing Cook or precisely why his counsel should have investigated this

42

alternative motive for killing Cook when Scheuing told the police that he planned to commit a robbery to get money to buy Potts an Xbox 360 and to get money that he could use to go to Michigan. Although the information that Scheuing argues should have been presented by his trial counsel appears to have been known by Potts and Kulp, Scheuing failed to specifically plead which witnesses would have been revealed though an "adequate" investigation and whether those witnesses would have been available to testify at the time of Scheuing's trial. Because Scheuing failed to allege these facts in his petition, the circuit court did not err when it summarily dismissed this claim as insufficiently pleaded.

## I.A.6.

Scheuing argues that his counsel were ineffective for "fail[ing] to prevent the introduction of inflammatory victim-impact evidence in the [guilt] phase." (Scheuing's brief, p. 19.)

In his third amended petition, Scheuing alleged that his counsel were ineffective when they did not object to "highly inflammatory victim-impact evidence during the guilt phase" from Cook's mother, Elaine Dockery. (C. 856.) Scheuing claimed that Dockery provided "an overview of Sean Cook's life, explaining the circumstances of his birth, the family's

43

experiences relocating, Mr. Cook's employment history, his living situation, and the fact that he was caring for his mother at the time of his death." (C. 856.) Scheuing further claimed that Dockery also testified to "the circumstances surrounding [her] discovery of her son's death and the moment she realized that he was no longer alive, as well as the impact the death had on her life." (C. 856.) Scheuing also claimed that the State "highlighted this evidence and encouraged the jury to consider the emotional impact of the offense of the victim's mother as evidence that Mr. Scheuing was guilty of capital murder." (C. 857.) Scheuing said that if his "counsel objected to the improper admission of victim-impact testimony there is a reasonable probability that [the trial court] would have excluded it and that the jury would have reached different verdicts in the culpability stage." (C. 859.)

The circuit court summarily dismissed this claim because Scheuing had "raised the issue underlying this ineffectiveness claim on direct appeal," and this Court "held that the victim's mother's testimony '"did not affect the outcome of the trial, that it did not prejudice [Scheuing's] substantial rights, and that it did not rise to the level of plain error."' Scheuing, 161 So. 3d at 265 (citation omitted)." (C. 1229.) The circuit

44

court, noting "that a finding of plain error on direct appeal does not foreclose Scheuing from arguing that he was prejudiced by his trial counsel's failure to object to certain testimony from the victim's mother," found that "Scheuing failed to plead any specific facts in his petition that, if true, would establish that his is a 'rare case'" where the application of the plain-error standard and the prejudice prong of <u>Strickland</u> will result in different outcomes. (C. 1230.)

As the circuit court explained, this Court, in Scheuing's direct appeal, addressed the claim underlying this claim of ineffective assistance of counsel and held:

> "'The Alabama Supreme Court has held that victim-impact statements:
>
>> "'"are admissible during the guilt phase of a criminal trial only if the statements are relevant to a material issue of the guilt phase. Testimony that has no probative value on any material question of fact or inquiry is inadmissible. <u>See</u> C. Gamble, <u>McElroy's Alabama Evidence</u> § 21.01 (4th ed. 1991), citing, inter alia, <u>Fincher v. State</u>, 58 Ala. 215 (1877) (a fact that is incapable of affording any reasonable inference in reference to a material fact or inquiry involved in the issue cannot be given in evidence). If

45

the statements are not material and relevant, they are not admissible."

"'Ex parte Crymes, 630 So. 2d 125, 126 (Ala. 1993).

"'"[T]he introduction of victim impact evidence during the guilt phase of a capital murder trial can result in reversible error if the record indicates that it probably distracted the jury and kept it from performing its duty of determining the guilt or innocence of the defendant based on the admissible evidence and the applicable law." Ex parte Rieber, 663 So. 2d 999, 1006 (Ala. 1995). The Court in Ex parte Rieber also said:

"'"However, in Ex parte Crymes, 630 So. 2d 125 (Ala. 1993), a plurality of this Court held in a capital murder case in which the defendant was sentenced to life imprisonment without parole that a judgment of conviction can be upheld if the record conclusively shows that the admission of the victim impact evidence during the guilt phase of the trial did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant."

"'663 So. 2d at 1005.'

"Woodward v. State, 123 So. 3d 989, 1021 (Ala. Crim. App. 2011).

"The appellant in Woodward argued that much of the testimony of the victim's widow regarding the victim was improper victim-impact evidence. Id. at 1020. In reviewing the record under the plain-error standard, this Court agreed that some of the testimony about which Woodward

46

complained was irrelevant and inadmissible. That evidence consisted of testimony about where and how the widow and victim met, that the victim, on the day he was shot, joked about an exercise machine he had recently purchased, that the victim had regularly donated plasma, and that the victim and the widow 'both had a policy to give of themselves to others.' Id. at 1021. This Court concluded, however, 'that the irrelevant portions of [the victim's widow's] testimony did not operate to deny Woodward a fair trial or otherwise prejudice a substantial right of Woodward's' and 'that it did not affect the outcome of the trial, that it did not prejudice Woodward's substantial rights, and that it did not rise to the level of plain error.' Id. at 1022.

"During the guilt phase of the trial, the only potential prejudice Scheuing could have faced from Dockery's testimony would have been the jury's relying on that testimony to find him guilty. When compared with the defense strategy, which was to admit guilt and focus on a favorable sentencing recommendation, this Court concludes that Dockery's testimony 'did not affect the outcome of the trial, that it did not prejudice [Scheuing's] substantial rights, and that it did not rise to the level of plain error.' Id. at 1022."

Scheuing, 161 So. 3d at 264-65 (emphasis added).

Although "'a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel,'" "it is 'the rare case in which the application of the plain-error test and the prejudice prong of the

47

<u>Strickland</u> test will result in different outcomes.'" <u>Bohannon</u>, ___ So. 3d at ____ (quoting <u>Ex parte Taylor</u>, 10 So. 3d at 1078).

As this Court noted in Scheuing's direct appeal, the only "potential prejudice" Scheuing could have suffered from Dockery's testimony was the jury finding him guilty of capital murder based on that testimony. But, "in light of Scheuing's defense strategy to admit guilt and to focus on sentencing," he cannot show that he was prejudiced by the admission of Dockery's testimony. <u>Scheuing</u>, 161 So. 3d at 281. As the circuit court noted in its order dismissing this claim of ineffective assistance of counsel, Scheuing failed to plead any facts showing that he was prejudiced by Dockery's testimony, and, thus, he failed to show why this claim was one of the "rare" claims in which prejudice can be found in a petition for relief filed pursuant to Rule 32, Ala. R. Crim. P., after this Court has found on direct appeal that no plain error occurred on the underlying claim. Thus, the circuit court properly dismissed this claim.

I.A.7.

Scheuing argues that his counsel were ineffective for "fail[ing] to object to the prosecution's improper assertion that [he] lacked remorse for the offense at the [guilt] phase." (Scheuing's brief, p. 21.) The totality

48

of Scheuing's argument on appeal is as follows: "Counsel were ineffective for failing to object to the prosecution's unfounded factual assertion that Mr. Scheuing lacked remorse for his prior murder conviction." (Scheuing's brief, p. 21.) Scheuing's one-sentence argument on appeal falls well short of satisfying the requirements of Rule 28(a)(10), Ala. R. App. P. Because Scheuing makes no argument and cites no authority as to this claim of ineffective assistance of counsel, Scheuing has waived and abandoned this argument on appeal, and we will not address it. See Washington v. State, 95 So. 3d 26, 75 (Ala. Crim. App. 2012) (holding that Washington's failure to comply with Rule 28(a)(10), resulted in his waiver of his argument on appeal).

### I.A.8.

Scheuing argues that his counsel were ineffective for "fail[ing] to adequately explain [to the jury his] statements to authorities." (Scheuing's brief, p. 21.) The totality of Scheuing's argument on appeal is as follows:

> "Counsel should have moved to suppress Mr. Scheuing's statements to law enforcement. [Kimmelman v.] Morrison, 477 U.S. [365,] 374-75 [(1986)]. Counsel's performance in this respect was deficient under Strickland v. Washington. As discussed above, Mr. Scheuing gave false confessions to law enforcement during the investigation of this case. He did so

49

because he wanted to protect his friend James Potts. Mr. Scheuing believed that he had nothing in life and that Mr. Potts had a family and a future. So Mr. Scheuing decided to fall on his proverbial sword to protect his friends.

"Had trial counsel properly investigated the circumstances of Mr. Scheuing's crime, they would have known that his confessions were filled with inaccuracies. That he had confessed to a robbery that never occurred. He was negotiating with a drug dealer and things went sour. He then killed him."

(Scheuing's brief, p. 22.)

Scheuing's two-paragraph argument does not satisfy Rule 28(a)(10), Ala. R. App. P., which, again, requires that an argument set out "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Scheuing makes no argument concerning the circuit court's judgment as to this claim of ineffective assistance of counsel. What is more, Scheuing cites only general propositions of law to support his claim that his counsel were ineffective, and he does not cite any portions of the record concerning this claim. He states that his counsel should have "moved to suppress" his statement but gives no grounds for suppression. Thus, Scheuing has waived this argument on appeal, and we will not address it. See

50

Washington, 95 So. 3d at 75 (holding that Washington's failure to comply with Rule 28(a)(10) resulted in his waiver of his argument on appeal).

### I.A.9.

Scheuing argues that his counsel were ineffective for "[f]ail[ing] to object to an unqualified fact witness lifting fingerprints and then testifying that they match without any meaningful foundation or being qualified as an expert in fingerprint analysis." (Scheuing's brief, p. 22.)

In his third amended petition, Scheuing alleged that his trial counsel were ineffective during the guilt phase of his trial when they failed to object to testimony from Officer Bobby Yancey. According to Scheuing:

> "During [his] culpability phase, the prosecution matched his fingerprints to latent prints lifted from physical evidence through the same fact witness: the lead investigating officer Bobby Yancey. Officer Yancey was qualified as an expert 'in the area of processing fingerprints.' (R. 835.) He was not qualified as an expert in matching prints. Nevertheless, the investigating officer who lifted the latent prints opined that they matched Mr. Scheuing's prints. (R. 839.) Officer Yancey did not provide a basis for this expert opinion aside from saying that grooves and ridges matched. (R. 836-40.)"

(C. 864-65.) Scheuing claimed that his counsel's failure to object to Officer Yancey's testimony was "unmistakably prejudicial" because, he

argues, "that fabricated 'match' was an unscientific attempt to connect Mr. Scheuing to the crime under the guise of science." (R. 866-67.)

The circuit court dismissed this claim as without merit, finding:

"Officer Yancey testified that he was certified in basic and advanced latent fingerprint investigation and examination. (R. 834.) Based on his qualifications, the circuit court permitted Officer Yancey to testify as an expert in fingerprint processing. (R. 835.) Since the court concluded that the State had established that Officer Yancey was an expert in fingerprint analysis, Scheuing's trial counsel had no legitimate ground to object and, therefore, were not ineffective for failing to do so. See Magwood v. State, 689 So. 2d 959, 981 (Ala. Crim. App. 1996) ('Counsel cannot be held ineffective for failing to make a challenge that has no basis in law or fact.')."

(C. 1234.)

As the circuit court correctly found, Scheuing's counsel had no basis to object to Officer Yancey's expert opinion as to Scheuing's fingerprints matching those found at the crime scene because Officer Yancey testified that he was qualified and trained both to collect and to process fingerprints and that he was "certified in basic and advanced latent fingerprint investigation and examination along with palm prints." (Record in CR-10-1454, R. 834 (emphasis added).) The circuit court qualified him as an expert in "the area of fingerprint processing," which would include all aspects of processing fingerprint evidence such as

52

fingerprint comparisons. So, as the circuit court found, "Scheuing's trial counsel had no legitimate ground to object and, therefore, were not ineffective for failing to do so. See Magwood v. State, 689 So. 2d 959, 981 (Ala. Crim. App. 1996) ('Counsel cannot be held ineffective for failing to make a challenge that has no basis in law or fact.')." (C. 1234.)

What is more, even assuming that his counsel should have objected to Officer Yancey's testimony, Scheuing failed to sufficiently plead facts showing how he was prejudiced by his counsel's alleged deficient performance. Although Scheuing claimed in his petition that the "fingerprints directly tied [him] to the murder with 'science,' so counsel's failure to object prejudiced him," (C. 867), Scheuing does not explain why being tied to the crime scene by fingerprint evidence mattered in light of his statement to law enforcement admitting to committing a robbery at the Pak-a-Sak store. His argument that prints placing Scheuing at the scene prejudiced him is also inconsistent with Scheuing's argument that his counsel should have agreed that Scheuing killed Cook, but that they should have provided a different theory as to why he killed Cook.

Because Scheuing's counsel had no basis for an objection to Officer Yancey's testimony and because, even if he had, he failed to sufficiently

53

plead prejudice, the circuit court did not err when it summarily dismissed this claim.

### I.A.10.

Scheuing argues that his counsel were ineffective for "fail[ing] to object to inadmissible prior-bad-act evidence." (Scheuing's brief, p. 23.)

In his third-amended petition, Scheuing alleged that his counsel were ineffective when they did not object to certain prior-bad-act evidence, claiming that,

> "[d]uring the guilt innocence phase, the prosecution introduced considerable evidence that [he] stole a Kia Sportage vehicle and a gun in the days leading up to the offense (R. 648-51, 652-56), and that [he] attempted to steal a purse several days after the offense (R. 713-14). Trial counsel failed to object to the introduction of this improper evidence and, in the case of the attempted purse theft, counsel stipulated to the admission of this aggravating prior bad acts evidence. Counsel then failed to object when, in his guilt innocence phase closing argument, the prosecution reminded the jury of this evidence, thus highlighting [his] involvement in the prior criminal activity."

(C. 868.) Scheuing claimed that he was prejudiced by his counsel's failure to object to this evidence because, had they objected, then "the trial court would have been obligated to exclude this evidence." (C. 869.) Scheuing claimed that, if the jury had not been exposed to this prior-bad-act

evidence, then "there is a reasonable probability that [he] would not have been convicted and sentenced to death." (C. 869.)

The circuit court dismissed this claim as follows:

"Scheuing raised the issues underlying these ineffectiveness claims on direct appeal. Concerning evidence that Scheuing stole the sports-utility vehicle and the gun before the murder, the Alabama Court of Criminal Appeals held that 'there was no error in the admission of the evidence regarding the theft of the Sportage and the pistol.' Scheuing, 161 So. 3d at 275. Since there was no error in the admission of this evidence, this Court finds that Scheuing cannot demonstrate that his trial counsel's performance was deficient and that he was prejudiced under Strickland. See Brooks v. State, [340 So. 3d 410, 466 (Ala. Crim. App. 2020)] ('Because this Court held [on direct appeal] that there was no error in the State's rebuttal closing argument, Brooks'[s] claim that his trial counsel were ineffective for failing to object to the State's rebuttal closing argument is without merit.').

"....

"Concerning the admission of evidence that Scheuing attempted to steal a purse after the murder, the Alabama Court of Criminal Appeals held on direct appeal that this evidence 'was admitted to establish an attempt by Scheuing to continue his "flight after the murder and, thus, his consciousness of guilt.'" Scheuing, 161 So. 3d at 276 (citation omitted). The Criminal Court of Appeals concluded that 'the admission of the evidence regarding the theft of [the victim's] purse was not ... plain error.' Id.

"This Court is aware that a finding of no plain error on direct appeal does not foreclose Scheuing from arguing that he was prejudiced by his trial counsel's failure to object to the prosecutor offering evidence that he attempted to steal a

55

purse after the murder. See Taylor, 10 So. 3d at 1078. However, 'Ex parte Taylor applies only to the prejudice prong of Strickland, not to the deficient-performance prong.' Woodward, 276 So. 3d at 769. This Court finds that Scheuing failed to plead any specific facts in his petition that, if true, would establish that his is a 'rare case.' See Boyd [v. State], 746 So. 2d [364,] 406 [(Ala. Crim. App. 1999)] ('Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.'').

"Based on the holding by the Alabama Court of Criminal Appeals and Scheuing's failure to plead any facts in his petition to dispute that holding, this Court finds that this ineffectiveness claim is without merit; therefore, it is denied. Rule 32.7(d), Ala. R. Crim. P."

(C. 1235-37.)

As the circuit court found in its order dismissing this claim, this Court, in Scheuing's direct appeal, addressed the claims underlying Scheuing's claim of ineffective assistance of counsel. In his direct appeal, Scheuing argued that the trial court erred when it allowed the State to introduce evidence of three theft offenses that, he said, was improper prior-bad-act evidence: (1) the theft of the Kia Sportage; (2) the theft of the pistol from the Kia Sportage; and (3) the theft of Palmer's purse. Scheuing, 161 So. 3d at 271. This Court, reviewing Scheuing's arguments for plain error, held that there was no error in the admission of the

evidence indicating that Scheuing had stolen the Kia Sportage and the

pistol, explaining as follows:

> "Scheuing argues that the State erroneously admitted evidence indicating that he stole the Sportage and the .38 caliber pistol. During November, but before Thanksgiving 2008, Scheuing stole Harrison's Sportage, which contained Jakiel's loaded .38 caliber pistol, the gun Scheuing used to kill Cook. The admission of the evidence of the theft of the Kia Sportage and the pistol, therefore, told the complete story of Scheuing's crimes. That evidence also explained how Scheuing acquired the pistol he used to murder Cook.

> "Scheuing argues that the introduction of evidence regarding the thefts of the Sportage and the pistol was 'unwarranted because it was entirely gratuitous' in light of the fact that the 'entire shooting in [the] case was captured on videotape and, upon request, Mr. Scheuing gave a complete and candid confession.' (Scheuing's brief, at 41.) The State, however, was not required to present minimal evidence establishing Scheuing's guilt. Rather, the State had the right to fully prove Scheuing's guilt with all relevant, admissible evidence."

Scheuing, 161 So. 3d at 274 (footnote omitted).

Because there was no error in the trial court's admitting evidence

indicating that Scheuing had stolen the Kia Sportage and the pistol, any

objection that his counsel could have raised concerning that evidence

would have been baseless. Thus, the circuit court did not err when it

summarily dismissed this claim. See, e.g., Carruth, 165 So. 3d at 645

(holding that counsel "were not ineffective for failing to raise a baseless objection").

As to Scheuing's argument that the trial court erred when it allowed the State to introduce evidence indicating that he stole a purse after he killed Cook, this Court held on direct appeal that the admission of that evidence did not rise to the level of plain error, explaining:

> "'"'In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution ... as tending to show the accused's consciousness of guilt.... The state is generally given wide latitude or freedom in proving things that occurred during the accused's flight.' C. Gamble, <u>McElroy's Alabama Evidence</u> § 190.01(1) (3rd ed.1977). 'Evidence of flight is admissible even though it is weak or inconclusive or if several days have passed since the commission of the crime.' <u>Tate v. State</u>, 346 So. 2d 515, 520 (Ala. Crim. App. 1977). Evidence of flight is admissible even though that evidence involves the commission of other crimes by the accused. <u>See</u> <u>Tate</u>, supra; <u>Neal v. State</u>, 372 So. 2d 1331, 1344-45 (Ala. Crim. App. 1979)."'

> "<u>Eggers v. State</u>, 914 So. 2d 883, 918-19 (Ala. Crim. App. 2004) (quoting <u>Beaver v. State</u>, 455 So. 2d 253, 257 (Ala. Crim. App. 1984)).

> "In <u>Eggers</u>, this Court addressed a claim of ineffective assistance of counsel that was based, in part, on an assertion that trial counsel should have objected to evidence establishing that, following the commission of a capital murder, the appellant 'was arrested in Kentucky while riding

58

in a stolen pickup truck....' <u>Eggers</u>, 914 So. 2d at 916. This Court concluded that the admission of the

>"'evidence relating to his arrest in Kentucky was not offered to show his bad character by establishing that he had committed another crime. Rather, the evidence appears to have had a dual purpose: to establish a link between Eggers and the red Nissan pickup truck because, as noted above, Francis's debit card was later found in that truck and to establish Eggers's flight after the murder and, thus, his consciousness of guilt.'

"<u>Id.</u> at 916.

>"Here, the admission of the evidence relating to Scheuing's attempted theft of the purse was admitted to establish an attempt by Scheuing to continue his 'flight after the murder and, thus, his consciousness of guilt.' <u>Id.</u> The evidence established that Scheuing had been headed toward the west coast. When he realized he was running low on gasoline, he attempted to steal Palmer's purse. This provided the jury with circumstantial evidence that the purpose for the theft was to obtain money to purchase gasoline to help him continue his flight. The admission of the evidence regarding the theft of Palmer's purse was not, therefore, plain error. Rule 45A, Ala. R. App. P."

<u>Scheuing</u>, 161 So. 3d at 275-76.

As explained above, and as correctly set out in the circuit court's order dismissing this claim, although "'a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under <u>Strickland</u>

59

to sustain a claim of ineffective assistance of counsel,' " "it is 'the rare case in which the application of the plain-error test and the prejudice prong of the Strickland test will result in different outcomes.' " Bohannon, [Ms. CR-21-0148, Aug. 18, 2023] ___ So. 3d at ____ (quoting Ex parte Taylor, 10 So. 3d at 1078).

As this Court noted in Scheuing's direct appeal, the State properly presented evidence of the attempted theft of the purse to show Scheuing's flight and, thus, to establish his consciousness of guilt. As the circuit court noted in its order dismissing this claim of ineffective assistance of counsel, Scheuing failed to plead any facts "in his petition to dispute that holding" (C. 1237); and, thus, he failed to show why this claim was one of the "rare" claims mentioned in Ex parte Taylor, supra, where the plain-error standard and the prejudice prong of Strickland will result in different outcomes. Thus, the circuit court properly dismissed this claim.

## I.A.11.

Scheuing argues, as he did in his third amended petition, that his counsel were ineffective for "fail[ing] to object to the State's improper arguments through the [guilt] phase that watered down the reasonable-doubt standard." (Scheuing's brief, p. 25.)

60

In his Rule 32 petition Scheuing claimed that

"[d]uring closing arguments at the guilt/innocence phase, the prosecution offered its own interpretation of the reasonable-doubt standard for the jury through erroneous, suggestive, and unlawful language that misled the jury as to the correct standard: 'What is reasonable doubt? ... A doubt is not just mere speculation, not fanciful conjecture, not guesswork, <u>not a doubt you've hunted up, not a juror who sits back in the room and says, you know, there's got to be more to this story, I can't believe stuff like this happens</u>. Sometimes the case is just what it is. You've seen clearly what occurred.' (R. 899-900) (emphasis added)."

(C. 869-70.) Scheuing continued:

"Most problematic, in its closing argument, the prosecution effectively eliminated the reasonable-doubt standard completely by telling jurors there was no doubt in Mr. Scheuing's case: 'Sometimes the case is just what it is. You've seen clearly what occurred.' (R. 900.) Additionally, though the prosecutor said reasonable doubt is not fanciful speculation, he continued to erode the standard by telling jurors that even doubts based on their common sense are not sufficient. (R. 899-900 ('But a doubt is not ... a juror who sits back in the room and says, you know, there's got to be more to this story ....'))."

(C. 870.) Scheuing claimed that he was prejudiced by his counsel's failure to object to these statements because an objection "would have prevented the prosecution from misstating the reasonable-doubt standard, and there is a reasonable probability that [he] would not have been convicted and sentenced to death." (C. 870-71.)

The circuit court dismissed this claim as being without merit because "the issue underlying this ineffectiveness claim" was raised on direct appeal and this Court held that Scheuing failed to show that the prosecutor's argument was error. (C. 1238.)

On appeal, Scheuing again merely reiterates the claim raised in his petition without mentioning or addressing the circuit court's order dismissing this claim. This Court has held that similar failures of an appellate brief render the brief noncompliant with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Woodward, 276 So. 3d at 746. Furthermore, the only legal authority cited by Scheuing is Cage v. Louisiana, 498 U.S. 39, 41 (1990), which involved a jury instruction by a trial court, not a comment by a prosecutor, and the instruction in Cage is entirely different than the statements made by the prosecutor in Scheuing's trail. Because Scheuing's argument on appeal does not comply with Rule 28(a)(10), he has waived his argument.

Even so, the circuit court properly dismissed this claim of ineffective assistance of counsel. As the circuit court correctly found in its order dismissing this claim, this Court, in Scheuing's direct appeal,

rejected the claim underlying Scheuing's claim of ineffective assistance

of counsel, holding:

> "In Jackson v. State, [169 So. 3d 1, 66] (Ala. Crim. App. 2010), this Court addressed a claim that the prosecution had, during closing argument, minimized the burden of proof by arguing 'that the [jurors] should rely on their gut feelings and look for the truth rather than holes or doubt in the case.' Jackson, [169 So. 3d 66]. This Court found no error under the plain-error standard, noting that 'the trial court properly instructed the jury as to the reasonable-doubt standard and admonished the jury members that they were not to consider the arguments of counsel as evidence in the case.' Id.
>
> "In Brown v. State, 11 So. 3d 866 (Ala. Crim. App. 2007), this Court addressed a claim of error based upon the prosecutor's argument: 'Remember I told you, you would know it in your gut what's reasonable doubt? You will know it in your gut. And I think you know it in your gut.' Brown, 11 So. 3d at 910. This Court found no plain error because:
>
>> " 'The circuit court specifically instructed the jury that it was not to consider arguments of counsel as the arguments related to the law and that the court would instruct the jury as to the law applicable in the case. The court correctly instructed the jury on reasonable doubt. There is no evidence that the above argument so infected the trial with unfairness that Brown was denied a fair trial.'
>
> "Id.
>
> "Here, the prosecutor did not eliminate the State's burden of proof by telling jurors that it had already been satisfied, nor did the prosecutor ask jurors to disregard their common sense in assessing whether reasonable doubt exists.

Rather, the prosecutor explained that fanciful speculation does not give rise to reasonable doubt and that the evidence the jury had seen and heard established Scheuing's guilt beyond a reasonable doubt. <u>There was nothing improper in the prosecutor's argument</u>. Furthermore, the circuit court instructed the jury: 'What the attorneys have had to say, both for the state and for the defendant, they are not any evidence in this case.' (R. 916-17.) The court also correctly instructed the jury on reasonable doubt.

"Accordingly, Scheuing has not established that the prosecutor's argument was error, much less plain error. <u>See</u> Rule 45A, Ala. R. App. P.; <u>Brown</u>, 11 So. 3d at 910."

<u>Scheuing</u>, 161 So. 3d at 284-85 (emphasis added).

Because this Court held that the complained-of comments were not improper and because this Court further held that the trial court properly instructed the jury on reasonable doubt, the issue underlying Scheuing's claim of ineffective assistance of counsel is without merit, and any objection that his counsel could have raised concerning those comments would have been baseless. Thus, the circuit court did not err when it summarily dismissed this claim. <u>See, e.g.</u>, <u>Carruth</u>, 165 So. 3d at 645 (holding that counsel "were not ineffective for failing to raise a baseless objection").

## I.A.12.

Scheuing argues that his counsel were ineffective for "fail[ing] to request jury instructions on lesser-included offenses." (Scheuing's brief, p. 26.)

In his third amended petition, Scheuing alleged that his trial counsel were ineffective because they

> "failed to request a lesser-included instruction, which left the jury to decide between acquittal or conviction for capital murder. With the third option unavailable, the jury was left to ('resolve any doubts in favor of a capital conviction;' an outcome that <u>Beck[ v. Alabama</u>, 447 U.S. [625 (1980),] found untenable. 447 U.S. at 632. Had trial counsel requested a lesser-included instruction, there is a reasonable probability that Mr. Scheuing would not have been convicted or sentenced to death."

(C. 871.)

The circuit court summarily dismissed this claim as insufficiently pleaded because Scheuing failed to allege "what specific lesser-included instructions his trial counsel should have requested," (C. 1238), and as without merit because this Court in Scheuing's direct appeal found no error in the trial court's "failure to give any lesser-included instructions." (C. 1239.)

The totality of Scheuing's argument on appeal is as follows:

65

"The United States Supreme Court has held that the failure to instruct on a lesser-included offense when there is some doubt regarding an element supporting a capital conviction impermissibly 'enhances the risk of an unwarranted conviction.' Beck v. Alabama, 447 U.S. 625, 637 (1980).

"Here, jurors viewed the confession and videotape of the offense (R. 828, 861). Properly handled, Scheuing could be presented to the jury as a lonely person who was protecting a third party, no matter how ill advised. Trial counsel, however, failed to request a lesser-included instruction, which left the jury to decide between acquittal or conviction for capital murder. With the third option unavailable, the jury was left to 'resolve any doubts in favor of a capital conviction,' an outcome that Beck found untenable. 447 U.S. at 632. Had this occurred, it is likely Scheuing would have avoided the death penalty."

(Scheuing's brief, p. 26.) Scheuing's two-paragraph argument does not satisfy the requirements Rule 28(a)(10), Ala. R. Crim. P. Thus, Scheuing has waived this claim.

Furthermore, the circuit court properly dismissed this claim as insufficiently pleaded. As the circuit court noted in its dismissal of this claim, although Scheuing alleged that his counsel were ineffective for failing to request a jury instruction on a lesser-included offense, Scheuing failed to allege what lesser-included offense his counsel should have requested an instruction on. Just as a petitioner's "failure to explain in his petition how the evidence presented at trial would have supported a

66

jury instruction [and, thus,] failed to meet the specificity requirements of Rule 32.6 (b), Ala. R. Crim. P.," Calhoun v. State, 261 So. 3d 457, 477 (Ala. Crim. App. 2016) (emphasis added), the failure to state which lesser-included charge that the petitioner believes should have been given is equally fatal to a claim of ineffective assistance of counsel. Thus, Scheuing's claim failed to satisfy the full fact pleading requirements set out in Rule 32.3 and 32.6(b), Ala. R. Crim. P., and the circuit court did not err when it dismissed this claim.

### I.A.13.

Scheuing argues that his counsel were ineffective for "fail[ing] to object to the trial court's instruction that confessions were due greater weight than other evidence." (Scheuing's brief, p. 27.)

In his third-amended petition, Scheuing alleged that his counsel were ineffective when they did not object to the following jury instruction given by the trial court:

> "'There has been testimony offered ... the defendant ... made an alleged statement or confession .... I want to tell you that such alleged confessions of guilt when deliberately and voluntarily made are among the most effectual and satisfactory proof that could be received in courts of justice.' (R. 932-33)."

(C. 872.) Scheuing alleged that he was prejudiced by his counsel's failure to object to this instruction because his "confession was a centerpiece of his trial" and the "prosecution relied heavily on it in its arguments." (C. 873.)

The circuit court summarily dismissed this claim because Scheuing "raised the issue underlying this ineffectiveness claim on direct appeal" and held that "'in light of Scheuing's defense strategy to admit guilt and to focus on sentencing, and the fact that the State's evidence of Scheuing's guilt was ironclad, any error in the jury instructions was harmless.'" (C. 1240 (quoting Scheuing, 161 So. 3d at 281 (citation omitted)).

As noted in the circuit court's order dismissing this claim, this Court, in Scheuing's direct appeal, examined the trial court's instruction in context of "the entire jury instruction regarding Scheuing's confessions," and found that "there is no 'reasonable likelihood that the jury applied the instruction[s] in an improper manner.'" Scheuing, 161 So. 3d at 281 (quoting Singletary v. State, 473 So. 2d 557 (Ala. Crim. App. 1984)). This Court further held that, "in light of Scheuing's defense strategy to admit guilt and to focus on sentencing, and the fact that the State's evidence of Scheuing's guilt was ironclad, any error in the jury

instructions was harmless. Ex parte Greathouse, 624 So. 2d at 211 (recognizing that error could be harmless when the evidence of the defendant's guilt is 'virtually ironclad')." Scheuing, 161 So. 3d at 281. Because this Court held in Scheuing's direct appeal that the complained-of instructions were, at worst, harmless, and because Scheuing alleged nothing in his petition that added to the argument he raised on direct appeal, the circuit court did not err when it dismissed this claim.

## I.A.14 and 15.

Scheuing argues that his counsel were ineffective for "fail[ing] to question the jury foreman and other jurors after the foreman disclosed misconduct." (Scheuing's brief, p. 28.) In a related claim, Scheuing also argues that his counsel were ineffective for "fail[ing] to move for a mistrial based on the jury foreman's misconduct." (Scheuing's brief, p. 29.)

In his third-amended petition, Scheuing claimed as follows:

"Trial counsel were ineffective in failing to question the jury foreman or any other juror following the disclosure that jury foreman T.K. overheard a bailiff say, "they ought to fry that --," after which the guard covered his mouth with his hands as he looked at the juror. (R. 955.) During jury deliberations at the guilt/innocence phase, jury foreman T.K. overheard a bailiff say that Mr. Scheuing should be executed. (R. 954.) The foreman contacted an attorney uninvolved in

69

the case who then contacted the court. (R. 954.) The Court briefly questioned the jury foreman outside of counsel's presence (R. 954-59), but trial counsel chose not to question the foreman or any other juror as to the reported misconduct (R. 959). Trial counsel failed to question the foreman about his contact with the attorney, including the extent of their discussion of the misconduct and the extent to which they had discussed any other facet of the case. This failure was all the more egregious because the juror misconduct occurred during the guilt/innocence phase deliberations. Trial counsel also failed to question other jurors as to whether the foreman discussed the comment with them, which would have been reasonable given that the foreman himself had already committed misconduct by talking about the case to a member of the public.

"Had trial counsel questioned other jurors, they would have discovered the extent of misconduct as well as the extent of prejudice it caused, they would have been better able to move for a mistrial, and Mr. Scheuing would not have been convicted of capital murder and sentenced to death. Foreman T.K. was the leader in the deliberations. He was an important person in the room -- the foreman."

(C. 873-74.) Scheuing also alleged that his counsel were ineffective for failing to move the trial court for a mistrial based on this alleged misconduct. (C. 874-75.)

The circuit court dismissed both claims because Scheuing raised "the issue underlying this ineffectiveness claim on direct appeal" and this Court found that "'the circuit court properly followed the process for addressing third-party contacts with jurors' and held that 'no error much

less plain error resulted from the circuit court's failure to declare a mistrial.'" (C. 1241-42 (quoting <u>Scheuing</u>, 161 So. 3d at 271).)

On appeal, Scheuing reiterates the claims raised in his petition without even mentioning or addressing the circuit court's order dismissing this claim. This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. <u>See, e.g.</u>, <u>Woodward</u>, 276 So. 3d at 746. Scheuing also cites no legal authority supporting his proposition that counsel should have questioned the juror about the discussion. Because Scheuing's arguments on appeal do not comply with Rule 28(a)(10), Ala. R. App. P., he has waived his arguments.

Even so, his arguments are without merit. To start, Scheuing's claim that his trial counsel were ineffective for failing to ask the jury foreman and other jurors questions about the alleged misconduct is insufficiently pleaded. Indeed, although Scheuing alleged that this counsel should have asked the jury foreman "about his contact with the attorney, including the extent of their discussion of the misconduct and the extent to which they had discussed any other facet of the case" and failed to ask "other jurors as to whether the foreman discussed the

71

comment with them," (C. 873), Scheuing did not allege how the jury foreman and the other jurors would have answered those questions had his trial counsel asked them. Scheuing also did not sufficiently allege how he was prejudiced by his counsel's alleged failures. Rather, Scheuing made only the bare allegation that his counsel "would have discovered the extent of misconduct as well as the extent of prejudice it caused," which, he said, would have allowed them to be "better able to move for a mistrial, and Mr. Scheuing would not have been convicted of capital murder and sentenced to death." (C. 874.) Yet, there is no basis to believe that the "extent of misconduct" is any greater than what was discussed during the trial. Scheuing's bare allegation of prejudice is not sufficient to satisfy his burden of pleading under Rule 32.3 and 32.6(b), Ala. R. Crim. P. See, e.g., Hyde, 950 So. 2d at 356 ("A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."). Thus, the circuit court did not err when it summarily dismissed this claim.

Additionally, the circuit court properly dismissed Scheuing's claim that his counsel were ineffective for failing to move for a mistrial. As the circuit court noted in its order dismissing this claim, this Court, in

Scheuing's direct appeal, held "that no error, much less plain error, resulted from the circuit court's failure to declare a mistrial." Scheuing, 161 So. 3d at 271. Because counsel is not "ineffective for failing to raise a baseless objection" or claim, Carruth, 165 So. 3d at 645, the circuit court properly dismissed Scheuing's claim that his counsel were ineffective for failing to move for a mistrial.

## I.B.  Penalty Phase

Next, we turn to Scheuing's arguments concerning his counsel's effectiveness during the penalty phase of his trial.

## I.B.1.

First, Scheuing argues that his counsel were ineffective for "fail[ing] to present a coherent mitigation theory, introducing aggravating evidence that directly contradicted their mitigating evidence." (Scheuing's brief, p. 31.)  Specifically, Scheuing says that his counsel were ineffective when they presented testimony from Robert Scheuing, Joanne Terrell, and Richard Green and later presented testimony from Donal Frye that undermined their mitigation theory that Scheuing did well in a structured environment and had changed since he had murdered Cook.  Scheuing explains that his

73

"[c]ounsel emphasized during their penalty phase presentation was that Scheuing did well in structured environments, such as Youth Challenge Academy, the Air Force, and prison. (See, e.g., 1074, 1083, 1173, 1177.) Counsel emphasized that Scheuing did well in structured environments in their opening and closing statements. (R. 976, 1242.) Counsel then elicited testimony from Robert Scheuing that Scheuing did well in 'very strict' and 'structured environments.' (R. 1073-74.) At the end of counsel's questioning of Robert Scheuing, counsel emphasized this point. (R. 1083.) Defense counsel also elicited testimony from Joann Terrell regarding Scheuing's ability to do well in a structured environment. (R. 1172, 173, 176.)

"These records painted a different story about Scheuing. The records show Scheuing's struggles in prison in Georgia, including his disciplinary history (C. 688-89, 696, 703, 804, 1046); his attempt to escape from prison in Georgia (C. 645-55, 891, 893, 944); and his altercation with an inmate while awaiting trial in the Calhoun County jail. (C. 516-38.)

"Counsel also called Donald Frye, the inmate at the jail with whom Scheuing had an altercation, to testify. (R. 1094-1 105.) This evidence directly contradicted counsel's claim, and Robert Scheuing and Joann Terrell's testimony, that Scheuing did well in structured environments.

"Counsel also attempted to argue that Scheuing had changed while awaiting trial in the Calhoun County jail. Richard Green testified that Scheuing sought him out, that they prayed together, and that he enrolled Scheuing in a Bible study. (R. 1108-19.) The testimony that defense counsel elicited from Donald Frye (R. 1094-1100), along with the jail records that counsel entered into evidence (C. 516-38), directly contradicted their attempt to prove that Scheuing had changed since the crime. On cross-examination of Richard Green, the prosecution pointed out this contradiction for the jury. (R. 120 ('When he stabbed Donald Frye 87 times could

74

it have been witnessing to him?').) On rebuttal, the prosecution entered into evidence testimony regarding the jail altercation and then played the video of the altercation for the jury. (R. 1213-24.)"

(Scheuing's brief, pp. 32-34.)

The circuit court dismissed the claim Scheuing raised in his third-amended petition as follows:

"The penalty-phase strategy that Scheuing's trial counsel pursued included presenting evidence to demonstrate to the jury and the circuit court that Scheuing did well in structured environments. Scheuing condemns his counsel as ineffective for presenting conflicting evidence, such as records from his time in prison in Georgia and records of his time in jail awaiting trial. Scheuing also contends that his counsel were ineffective for calling Donald Frye to testify about an incident at the Calhoun County Jail during which Scheuing stabbed Frye multiple times with a pen.

"The Eleventh Circuit has held that '[o]penness in a jury trial is a move that can pay off. We have previously recognized the reasonableness of being forthcoming with the jury.' Walls v. Buss, 658 F.3d 12741 1279 (11th Cir. 2011). It is clear to this Court that Scheuing's trial counsel were aware that the State was entitled to present evidence to disprove the existence of mitigating circumstances on which Scheuing might rely and made the strategic decision to present the evidence first in the hope of lessening its impact on the jury. This Court finds that this strategy was objectively reasonable under the circumstances and did not constitute deficient performance on the part of Scheuing's counsel nor was it prejudicial to him. See State v. White, 693 N.E.2d 772, 779-80 (Ohio 1998) (holding that defense counsel's strategy of eliciting and allowing testimony of the defendant's prior bad acts in an attempt to 'lessen the blow' of the evidence 'was

75

sound and did not amount to ineffective assistance of counsel'); see also Martin v. State, 265 S.W.3d 435, 445 (Tex. Crim. App. 2007) ('Because it also appears that appellant's candor before the jury concerning his prior convictions was a strategic attempt to appear open and honest, and to lessen the impact of any impeachment on the issue, we cannot conclude that his counsel provided ineffective assistance with regard to the introduction of these convictions.')."

(C. 1243-44 (some citations omitted).)

On appeal, Scheuing reiterates the allegations he raised in his petition. But Scheuing does not address the reasons the circuit court gave in its order for summarily dismissing this claim. This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Woodward, 276 So. 3d at 746. In this section of his appellate brief, he did not state what "coherent mitigation theory" should have been presented, how the complained of testimony could have been precluded from being admitted into evidence, or why the trial court was incorrect in holding that counsel followed a reasonable trial strategy. Although he cites some legal authority in a preliminary and related section of his brief that accurately reflects trial counsel's obligation to investigate penalty phase issues in a capital murder trial, he cites no legal authority supporting his argument that the alleged failure to

present a "coherent mitigation theory" should result in Scheuing being granted relief. Because Scheuing's argument on appeal does not comply with Rule 28(a)(10), Ala. R. App. P., he has waived his argument.

Even so, the circuit court properly dismissed this claim of ineffective assistance of counsel. As Scheuing alleged in his petition and as the circuit court noted in its order dismissing this claim, Scheuing's trial counsel's mitigation strategy was based, in part, on showing that Scheuing did well in a structured environment. As the circuit court pointed out, doing so opened the door for the State to present rebuttal evidence that Scheuing had stabbed Donald Frye, an inmate in the Calhoun County jail. Instead of allowing the State to present testimony from Frye about the stabbing, Scheuing's counsel made the decision to call Frye and to be open and honest with the jury about Scheuing's encounter with Frye.

During Frye's testimony, Frye said that Scheuing had stabbed him 87 times with an ink pen, but he admitted that he had instigated it by telling Scheuing that Scheuing "ain't no killer, there ain't no guns in here." (Record in CR-10-1454, R. 1096-97.) Frye also explained that he should not have been out of his cell at the same time as Scheuing when

77

the attack occurred because the jail unit was only supposed to allow one cell open at a time for a one-hour period, and that Scheuing and Frye were in different cells. Frye said that they were only out at the same time because of "neglect of the officer"; "they forgot to lock him down or didn't lock him down before they let me out." (Record in CR-10-1454, R. 1098-99.) In other words, it was a failing of institutional structure that led to the stabbing. Scheuing's counsel also referenced Scheuing's having stabbed Frye in the penalty-phase closing argument and attempted to explain to the jury that Richard Green's testimony showed that Scheuing is "not the Jesse Scheuing that stabbed somebody 87 times." (Record in CR-10-1454, C. 1256.) Rather, Scheuing had changed.

Although Scheuing's Rule 32 counsel alleged that his trial counsel's strategy of being open and honest about Scheuing's having stabbed Frye in jail was ineffective and undermined their mitigation case, as the circuit court explained, openness and honesty may be a reasonable strategic choice:

> "Openness in a jury trial is a move that can pay off. We have previously recognized the reasonableness of being forthcoming with the jury. See Straight v. Wainwright, 772 F.2d 674, 681 (11th Cir. 1985) (counsel was not ineffective for failing to object to a question on cross-examination, where counsel was pursuing a plan of being 'truthful and open' with

the jury).  Moreover, we have recognized that it can be reasonable to let incriminating evidence come to the jury's attention.  See Atkins v. Singletary, 965 F.2d 952, 960 (11th Cir. 1992) (in a prosecution for the kidnapping, sexual battery, and murder of a six-year old boy, counsel was not ineffective for allowing prosecutors to put into evidence the male defendant's confession to sexual relations with 45 boys and young men, where counsel's plan was to 'bring into play [the defendant's] sexual proclivities')."

Walls v. Buss, 658 F.3d 1274, 1279 (11th Cir. 2011).  What is more, Scheuing did not adequately plead any facts showing that he was prejudiced by his counsel's decision to call Frye to testify.  Thus, the circuit court did not err when it summarily dismissed this claim.

### I.B.2.

Scheuing argues that his counsel were ineffective for "fail[ing] to adequately investigate and present a basis for a sentence of life at the penalty and sentencing phases of [his] trial." (Scheuing's brief, p. 34.)

According to Scheuing, his trial counsel "interviewed Robert Scheuing, Marilynn Scheuing, Timothy Scheuing, and Roberta Scheuing together but failed to conduct adequate follow-up interviews." (Scheuing's brief, p. 35.)  Scheuing also said that, although his counsel interviewed Trevor Atkins and Michael Atkins, who lived next door to Scheuing, the interview occurred in the presence of Robert Scheuing

79

(Scheuing's father). Scheuing said that, if his counsel had spoken with Trevor without Robert being present, "he would have informed counsel that while Marilynn and Robert Scheuing might have claimed to be good parents, they were just the opposite." (Scheuing's brief, pp. 35-36.)

Scheuing also said that his trial counsel "failed to contact mitigation witnesses who were available and willing to testify, including Sarah Counts, John Renn, Zachary Donner, Spencer Davis, Dustin Helms, Mills Horn, Sandy Chambers, Lisa Fesperman, Kay Cook, Jack Loftin, Randy Yonz, Robert Kline, Betsy Clark, Brenda Luke, Janet Zimmerman, Jeffrey Helms, Anina Davis, Irene Shadron, Tara Atkins, and Peggy Ray." (Scheuing's brief, p. 36.) As to these people, Scheuing says that they would have testified as follows:

> "• Zachary Donner could have testified that Scheuing's mother seemed to hate him and that Scheuing would live with Donner during the summer months.
>
> "• Dustin Helms -- childhood friend who could have testified that Scheuing's childhood home was filthy and disgusting. Scheuing's bed was two boards.
>
> "• Anina Davis, mother of a childhood friend could have testified about the lack of supervision and loving home.
>
> "• Irene Shadron, neighbor who testified that Scheuing would go over there to seek attention and was very good to her.

80

"• Mills Horn -- could have testified that Scheuing's stepfather also hated him and would severely beat him.

"• Sandy Chambers, school official, would have testified that this was not a stable or loving family.

"• Kay Cook, Scheuing's math and reading teacher could have testified to his academic potential.

"• Jack Loftin, Technology teacher could have testified that Scheuing never got into a fight.

"• Betsy Clark would have testified that he was mostly in special education classes.

"• Janet Zimmerman, who supervised Scheuing at the Youth Challenge Academy.

"• Trevor Atkins -- knew Scheuing when he first was released from prison. Knew that Scheuing had a girlfriend, April Musgrove. Trevor could testify this person was playing Scheuing.

"• Tara Atkins could have testified to Scheuing having a girlfriend who may have miscarried.

"• Sarah Counts -- could have testified that Scheuing's girlfriend was lying about the pregnancy and miscarriage to get money from him.

"• Michael Atkins -- could have testified that he lived with Scheuing upon his release from prison. He also felt April was using Scheuing.

(Scheuing's brief, pp. 36-38.)

Although Scheuing makes these above-listed allegations in his brief on appeal, which reiterates the allegations he raised in his third-amended petition, Scheuing does not address the reasons the circuit court gave in its order for summarily dismissing this claim of ineffective assistance of counsel. In fact, Scheuing does not mention the circuit court's order in his argument on appeal. As previously noted, this Court has held that similar failures render a brief noncompliant with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Woodward, 276 So. 3d at 746.

Even so, the circuit court properly dismissed this claim of ineffective assistance of counsel. The circuit court summarily dismissed Scheuing's claim of ineffective assistance of counsel as follows:

> "On pages 53-55 of Scheuing's petition, he claims that his trial counsel were ineffective for not interviewing his siblings and his friend outside the presence of Scheuing's parents. (Doc. 77 at 54-56.)

> "When a petitioner claims that his trial counsel were ineffective for failing to properly interview witnesses, the petitioner is required to state facts in his petition showing that the failure '"resulted in counsel's ignorance of valuable evidence which would have substantially benefitted the accused.'" Walker v. State, 194 So. 3d 253, 292 (Ala. Crim. App. 2015) (citation omitted). Scheuing fails to proffer in his petition what specific information his siblings and friend would have disclosed to his counsel if they had been

82

interviewed outside the presence of his parents. Scheuing also fails to state in his petition why there is a reasonable probability that testimony from these individuals, if presented during the penalty phase of trial, would have been so compelling it would have caused a different outcome. Scheuing fails to proffer any specific facts in his petition that, if true, would demonstrate his counsel's performance was deficient and caused him to be prejudiced. See Mashburn v. State, 148 So. 3d 1094, 1125 (Ala. Crim. App. 2013) ('Speculation is not sufficient to satisfy a Rule 32 petitioner's burden of pleading.').

"....

"On page 55 of Scheuing's petition, he claims that his trial counsel were ineffective for not contacting his biological half-sister and her ex-husband. (Id. at 56.) Scheuing contends that they took him in because his adoptive mother demeaned him, kicked him out of the house, and that Scheuing was otherwise ignored by his adoptive parents. On page 56 of Scheuing's petition, he claims that his counsel were ineffective for not contacting more of his friends. (Id. at 57.) He also contends these individuals would have testified that the Scheuing household was a 'chaotic and disturbing' place and that Scheuing was bullied and demeaned at home and at school. (Id.) Scheuing also claims on pages 57-58 of his petition that his counsel were ineffective for not contacting certain former teachers and administrators. He contends these individuals would have testified that he struggled in school and had a difficult home life. (Id. at 58- 59.) On pages 58-59 of his petition, Scheuing claims that his counsel were ineffective for not contacting other individuals, including some of his former teachers and neighbors. (Id. at 59-60.)

"'"There is ... no per se rule that failure to interview witnesses constitutes ineffective assistance. Ineffective assistance cases turn on their individual facts."' Benjamin v. State, 156 So. 3d 424, 441-42 (Ala. Crim. App. 2013) (citation

83

omitted). Additionally, '[t]he Constitution imposes no burden on counsel to scour a defendant's background for potential abuse given the defendant's contrary representations or failure to mention the abuse.' Stewart v. Sec'y, Dept. of Corr., 476 F.3d 1193, 1211 (11th Cir. 2007).

"Joanne Terrell, an experienced mitigation investigation specialist that was retained by Scheuing's trial counsel, stated in her written report that Scheuing characterized his childhood with his adoptive family as 'quiet, comfortable, and middle class.' (C. 419.) Scheuing also told Ms. Terrell that he and his adoptive mother were 'close' and that his adoptive father was his 'best friend.' Id. There was nothing in Ms. Terrell's report indicating that anyone in the Scheuing household, including Scheuing, had ever reported that he was mistreated by his mother. See Newland v. Hall, 527 F.3d 1162, 1202 (11th Cir. 2008) ('In evaluating the reasonableness of a defense attorney's investigation, we weigh heavily the information provided by the defendant.').

"While Scheuing reported to Ms. Terrell that he was bullied at school, there was nothing in her report indicating that Scheuing, or any of his siblings, disclosed to his trial counsel or Ms. Terrell that Scheuing had been bullied or otherwise mistreated at home. In addition, rather than argue that Scheuing's childhood problems were due to being bullied at school, his counsel presented evidence proving that Scheuing was diagnosed with ADHD and conduct disorder and was not properly treated because his adoptive mother believed that his behavioral problems were caused by Fetal Alcohol Syndrome.

"Just because Scheuing's trial counsel did not present every possible detail about his childhood that he now believes they should have does not demonstrate counsel's performance was deficient and prejudicial. See Tanzi v. Secy, Dept. of Corr., 772 F.3d 664, 659 (11th Cir. 2014) ('"[C]ounsel is not required to present all mitigation evidence, even if the

84

additional mitigation evidence would not have been incompatible with counsel's strategy. Counsel must be permitted to weed out some arguments to stress others and advocate effectively.'") (citation omitted)."

(C. 1245-49.) We agree with the circuit court's judgment.

As set out above, Scheuing alleged in his third-amended petition that the above-mentioned individuals would have testified, among other things, that Scheuing's home life with his parents was not as good as it seemed. But, as the circuit court pointed out, Scheuing told Joanne Terrell, the hired mitigation specialist, that his home life was "'quiet, comfortable, and middle class.'" (C. 1248 (citation omitted).) Although Scheuing alleged in his third amended petition that his counsel were ineffective for failing to investigate and present evidence of his difficult home life, this Court has held that

> "'"[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information."'
>
> "Jones v. State, 753 So. 2d 1174, 1191 (Ala. Crim. App.1999). '[T]he scope of the duty to investigate mitigation evidence is substantially affected by the defendant's actions, statements,

and instructions. As the Supreme Court explained in Strickland, the issue of what investigation decisions are reasonable "depends critically" on the defendant's instructions....' Cummings v. Secretary, Dep't of Corr., 588 F.3d 1331, 1357 (11th Cir. 2009)."

James v. State, 61 So. 3d 357, 364 (Ala. Crim. App. 2010). Scheuing's trial counsel were not constitutionally ineffective for failing to investigate and present evidence of Scheuing's difficult home life when Scheuing had described his home life to Terrell as "'quiet, comfortable, and middle class.'" (C. 1248 (citation omitted).)

Furthermore, as set out above, Scheuing claimed that his counsel were ineffective for failing to interview people and to investigate and present evidence of Scheuing's issues at school, at "Youth Challenge Academy," and his relationship with April Musgrove. This Court has explained that,

> "'[w]hen claims of ineffective assistance of counsel involve the penalty phase of a capital murder trial the focus is on "'whether "the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."'" Jones v. State, 753 So. 2d 1174, 1197 (Ala. Crim. App. 1999), quoting Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992). See also Williams v. State, 783 So. 2d 108 (Ala. Crim. App. 2000). An attorney's performance is not per se ineffective for failing to present mitigating evidence at the

86

penalty phase of a capital trial. See State v. Rizzo, 266 Conn. 171, 833 A.2d 363 (2003); Howard v. State, 853 So. 2d 781 (Miss. 2003), cert. denied, 540 U.S. 1197 (2004); Battenfield v. State, 953 P.2d 1123 (Okla. Crim. App. 1998); Conner v. Anderson, 259 F. Supp. 2d 741 (S.D. Ind. 2003); Smith v. Cockrell, 311 F.3d 661 (5th Cir. 2002); Duckett v. Mullin, 306 F.3d 982 (10th Cir. 2002), cert. denied, 123 S. Ct. 1911 (2003); Hayes v. Woodford, 301 F.3d 1054 (9th Cir. 2002); and Hunt v. Lee, 291 F.3d 284 (4th Cir.), cert. denied, 537 U.S. 1045 (2002).'

"Adkins v. State, 930 So. 2d 524, 536 (Ala. Crim. App. 2001) (opinion on return to third remand). As we also stated in McWilliams v. State, 897 So. 2d 437, 453-54 (Ala. Crim. App. 2004):

"'"Prejudicial ineffective assistance of counsel under Strickland cannot be established on the general claim that additional witnesses should have been called in mitigation. See Briley v. Bass, 750 F.2d 1238, 1248 (4th Cir. 1984); see also Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990). Rather, the deciding factor is whether additional witnesses would have made any difference in the mitigation phase of the trial." Smith v. Anderson, 104 F. Supp. 2d 773, 809 (S.D. Ohio 2000), aff'd, 348 F.3d 177 (6th Cir. 2003). "There has never been a case where additional witnesses could not have been called." State v. Tarver, 629 So. 2d 14, 21 (Ala. Crim. App. 1993).'"

Hunt v. State, 940 So. 2d 1041, 1067-68 (Ala. Crim. App. 2005).

In his third amended petition, Scheuing set out the list of people he said his counsel should have interviewed and a brief explanation of what

87

those people would have testified to during the penalty phase. As for how he was prejudiced by his counsel's failure to interview these potential witnesses, Scheuing alleged:

"Trial counsel's failure to adequately investigate and present mitigating evidence resulted in prejudice to Mr. Scheuing, requiring this Court to reverse his sentence. Strickland, 466 U.S. at 687, 692; Williams [v. Taylor], 529 U.S. [362,] 396-97 [(2000)]. Despite counsel's ineffective investigation and presentation, two jurors recommended that Mr. Scheuing be sentenced to life without parole. Had counsel conducted an adequate investigation, they could have gathered compelling mitigating evidence regarding Mr. Scheuing's experiences as an infant, in the Scheuing household, and in school. Counsel's errors, individually and collectively, denied Mr. Scheuing effective assistance of counsel in violation of Article I, Sections 6, 8, and 5 of the Alabama Constitution, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. But for counsel's deficient performance, the outcome of Mr. Scheuing's trial would have been different.

"Despite the inadequate mitigation presentation, the jury nevertheless refused to unanimously return a death verdict. During the judicial sentencing phase, trial counsel failed to proffer any additional evidence; indeed, counsel barely made an argument as to why the jury's verdict was correct and that Mr. Scheuing should be sentenced to life without the possibility of parole. The Eleventh Circuit Court of Appeals has held that the 'relative weakness of the state's death penalty case is underscored by the fact that the jury recommended a life sentence,' and where 'the jury decisively voted against the death penalty ... it weighs heavily in favor of a finding of prejudice,' in an ineffectiveness claim. Williams v. Allen, 542 F.3d 1326, 1343 (11th Cir. 2008). The same is true in Mr. Scheuing's case.

"Counsel's failure to investigate and adequately present evidence at the penalty phase of Mr. Scheuing's trial prejudiced him. Had the jury and judge been presented with the readily available facts from Mr. Scheuing's background, there is a reasonable probability that Mr. Scheuing would not have received a death sentence. Strickland, 466 U.S. 668. See also Daniels [v. State], 650 So. 2d [544,] at 552 [(Ala. Crim. App. 1994)]; Hyde [v. State], 950 So. 2d. [344,] 355-56 [(Ala. Crim. App. 2006)]."

(C. 920-21.)

Here, Scheuing's claim that he was prejudiced by his counsel's failure to interview the above-named witnesses does not adequately set out a full factual basis of prejudice under Rule 32.3 and Rule 32.6(b), Ala. R. Crim. P., and does not adequately explain how testimony from these witnesses that would have contradicted Scheuing's own statement to his mitigation specialist (and thus weakened Terrell's testimony) would have changed the balance of how the sentencer in this case would have weighed the aggravating and mitigating circumstances. Accordingly, the circuit court did not err in dismissing this claim.

### I.B.3.

Scheuing argues that his counsel were ineffective for "fail[ing] to adequately investigate or present evidence regarding [his] significant

struggles with mental illness to the jury and judge." (Scheuing's brief, p.

38.) The totality of Scheuing's argument on appeal is as follows:

> "Uncontested evidence that Mr. Scheuing suffered from a 'serious psychological disease' -- while not rendering him not guilty by reason of mental disease or defect -- was certainly a mitigating circumstance that should have been fully considered and weighed by the trial court. See Porter v. McCollum, 558 U.S. 30, 40 (2009) (reversing where jury deprived of mitigating evidence of mental illness); Brewer v. Quarterman, 550 U.S. 286, 289-90, 294, 296 (2007) (reversing where jury precluded from considering evidence of mental illness); Rompilla v. Beard, 545 U.S. 374, 391-93 (2005) (reversing where jury deprived of evidence of mental illness); Eddings v. Oklahoma, 455 U.S. 104, 114-15 (1982) (reversing death sentence where state trial and appellate courts gave 'relevant mitigating evidence' concerning mental illness 'no weight by excluding such evidence from their consideration').
>
> "As mentioned above, Mr. Scheuing almost certainly has Fetal Alcohol Syndrome. He also reports multiple head blows that left scars on him. Mr. Scheuing has troubles moving short-term memories into his long-term memory. His awful experiences with his birth mother and Marilynn Scheuing most certainly left him with attachment disorders."

(Scheuing's brief, pp. 38-39.)

Scheuing's two-paragraph "argument," which is taken verbatim

from the claim raised in his third amended Rule 32 petition (see C. 921-

22), cites only general propositions of law, fails to cite the record on

appeal, and does not address the reasons the circuit court gave in its

order for summarily dismissing this claim. The trial court correctly held

90

that Scheuing failed to identify what "evidence" his counsel should have obtained and that he did not "name any qualified mental health expert that was available and willing to testify at his trial that Scheuing suffers from Fetal Alcohol Syndrome, abnormalities with attachments, or any other serious mental illness." (C. 1258-59.) In short, not only is Scheuing's argument without merit, it does not satisfy Rule 28(a)(10), Ala. R. App. P. Thus, Scheuing has waived his argument. See, e.g., Woodward, 276 So. 3d at 746 (holding that Woodward's argument on appeal did not satisfy Rule 28(a)(10) and was, therefore, deemed waived when he "reassert[ed] this claim from his petition, but he ma[de] no argument regarding why he believe[d] the circuit court's findings were incorrect").

### I.B.4.

Scheuing argues that his counsel were ineffective for "fail[ing] to challenge the State-appointed psychologist's pretrial diagnosis of Anti-Social Personality Disorder." (Scheuing's brief, p. 39.) The totality of Scheuing's argument on appeal is as follows:

> "Mr. Scheuing pretrial mental evaluation determined that he had an Anti-Social Personality Disorder ('ASPD') erroneously. Mr. Scheuing cannot have ASPD because he suffers from bipolar disorder. And a person cannot have

91

ASPD while suffering from organic brain damage from Fetal Alcohol Syndrome. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 662 (5th ed. 2013).

"The Fourteenth Amendment's Due Process Clause also forbids the State from using this unscientific evidence masked as medical science. See, e.g., Gimenez v. Ochoa, 821 F.3d 1136 (9th Cir. 2016); Lee v. Superintendent, 798 F.3d 159 (3d Cir. 2015).

"Because the State's psychologist made this diagnosis and submitted it to the Court, it was part of the Record. The trial judge is presumed to know and consider the Record when making decisions in a case, so the court considered this evidence when overriding the jury's verdict of life. This evidence was highly prejudicial and entitles Mr. Scheuing to sentencing relief."

(Scheuing's brief, pp. 39-40.)

Scheuing's argument, which is a verbatim copy of the claim he raised in his third amended Rule 32 petition (see C. 923-24), does not cite the record on appeal and does not address the reasons the circuit court gave in its order for summarily dismissing this claim. Thus, Scheuing's argument does not satisfy Rule 28(a)(10), Ala. R. App. P., and is waived for appellate review. See, e.g., Woodward, 276 So. 3d at 746.

Even if Scheuing's argument had satisfied Rule 28(a)(10), his argument is without merit. The circuit court summarily dismissed this

92

claim regarding counsel's failure to contest his anti-personality disorder diagnoses as insufficiently pleaded, finding as follows:

"On pages 96-97 of Scheuing's petition, he claims that his trial counsel failed to challenge testimony from Dr. Glen King that he met the diagnostic criteria for Anti-Social Personality Disorder. (Doc. 77 at 97-98.)

"Scheuing fails to identify in his petition by name any qualified mental health expert that was available and willing to testify at his trial that Scheuing suffers from bipolar disorder or organic brain damage due to Fetal Alcohol Syndrome. See Brooks, [340 So. 3d 410, 437 (Ala. Crim. App. 2020)]. Scheuing also fails to explain in his petition why such testimony would have challenged Dr. King's testimony that he met the diagnostic criteria for Anti-Social Personality Disorder (ASPD) or why it is allegedly impossible to diagnose someone with both ASPD and bipolar disorder."

(C. 1259-60.) We agree with the circuit court.

Although Scheuing made general allegations that his counsel should have challenged Dr. King's testimony about his diagnosis of Anti-Social Personality Disorder because, he says, he "cannot have ASPD because he suffers from bipolar disorder" and "a person cannot have ASPD while suffering from organic brain damage from Fetal Alcohol Syndrome," Scheuing alleged no facts establishing how his counsel would have shown that Dr. King's diagnosis was incorrect, how his counsel would have shown that he has bipolar disorder, or how his counsel would

93

have shown how it is impossible for a person to be diagnosed with both Anti-Social Personality Disorder and bipolar disorder. As the circuit court found, Scheuing failed to identify by name any person his counsel should have called to testify about the above-mentioned claims. Thus, as the circuit court correctly found, Scheuing's claim was insufficiently pleaded and he is not entitled to relief on this claim.

I.B.5.

Scheuing argues that his counsel were ineffective "during opening argument of the penalty phase." (Scheuing's brief, p. 40.)

In his third amended petition, Scheuing alleged that his counsel were ineffective during "opening arguments." (C. 924.) First, Scheuing alleged that, during the State's penalty-phase opening statement, the State told the jury that it was going to present two aggravating circumstances (namely, that the offense was committed during a robbery and that Scheuing committed the offense while under a sentence of imprisonment) and that the State informed the jury that Scheuing "had been convicted of several felony counts in Georgia." (C. 234.) In response, Scheuing said that his counsel

> "told the jury that [Scheuing] had gotten in trouble for
> stealing cars in Georgia; that he had served time in prison;

94

and that he had been charged with escape. All these undoubtedly aggravating instances were irrelevant to any of the aggravating circumstances and thus inadmissible at trial. Later in the opening statement, when defense counsel read through the possible aggravating circumstances, counsel once again mentioned the car thefts and stated that they were not relevant to the aggravating circumstances. Had counsel not introduced these facts to the jury during its opening argument, and had counsel objected when the prosecution tried to mention these facts, the jurors would not have been aware of [Scheuing's] prior crimes and thus they would not have considered them during their deliberations."

(C. 924-25 (citations omitted).)

Second, Scheuing alleged that his counsel were ineffective during their penalty-phase opening statements because

"counsel also did not attempt to explain how any of the mitigating circumstances affected [Scheuing]. Counsel repeatedly promised the jury that 'Joann Terrell, the mitigating expert, will explain to you how that has an effect on someone and certainly how it had an effect on [Scheuing].' In fact, Ms. Terrell would struggle to explain to the jury how the mitigating factors affected [Scheuing]."

(C. 925 (citations omitted).) Scheuing claimed that, if his counsel had "outlined a coherent mitigation narrative, and explained how the evidence would mitigate [Scheuing's] culpability, there is a reasonable probability that [he] would not have been sentenced to death." (C. 925-26.)

This circuit court dismissed this claim as follows:

95

"The prosecutor informed Scheuing's trial counsel during a pretrial hearing that the State would present evidence during the penalty phase to prove that he was on parole at the time of the murder to establish an aggravating circumstance. Rather than have jurors wonder or speculate about what crimes Scheuing had committed in Georgia that landed him on parole, his counsel informed them that he had been convicted of nonviolent crimes. See Straight v. Wainwright, 772 F.2d 674, 681 (11th Cir. 1985) (counsel was not ineffective for failing to object to a question on cross-examination, where counsel was pursuing a plan of being 'truthful and open' with the jury). This Court finds that Scheuing's counsel's performance was neither deficient nor prejudicial.

"This Court finds that this ineffectiveness claim is without merit; therefore, it is denied. Rule 32.7(d), ALA. R. CRIM. P.

"Scheuing also asserts that his trial counsel were ineffective for failing to explain, or have Ms. Terrell adequately explain, to the jury how the mitigating circumstances affected him. Scheuing fails, however, to proffer in his petition specifically what his counsel should have said during opening statements or what Ms. Terrell should have said during her testimony. He also fails to specifically plead in his petition why there is a reasonable probability the outcome would have been different if his counsel or Ms. Terrell had made additional or different statements during the penalty phase of his trial. See Van Pelt v. State, 202 So. 3d 707, 735 (Ala. Crim. App. 2015) ('Van Pelt fails to allege with any specificity what counsel should have argued and how those particular arguments would have changed the result of his trial.').

"This Court finds that this ineffectiveness claim is deficiently pleaded; therefore, it is summarily dismissed. Rule 32.7(d), ALA. R. CRIM. P."

96

(C. 1260-62 (some citations omitted).)

The circuit court properly dismissed this claim of ineffective assistance of counsel. This Court has explained:

"In People v. Leeper, 317 Ill. App. 3d 475, 251 Ill. Dec. 202, 740 N.E.2d 32 (2000), the Illinois Court of Appeals made the following observations concerning an attorney's performance during opening statements:

"'[Counsel] made only a perfunctory opening statement and closing argument. Counsel is not required by law to make an opening statement at all. Pietsch v. Pietsch, 245 Ill. 454, 456-57, 92 N.E. 325, 326 (1910). [Counsel's] opening statement was short; however, it explained what [counsel], in his professional judgment, thought was necessary. Specifically, [counsel] explained that the burden of proof was on the State and suggested that the jury listen carefully to both versions of the events. [Counsel's] closing argument was also short, but in light of the amount of evidence presented, it was satisfactory. Counsel is given great latitude in his or her closing argument to the jury. Black v. Laggren, 313 Ill. App. 3d 39, 44, 245 Ill. Dec. 851, 728 N.E.2d 1208, 1213 (2000). [Counsel's] closing argument again outlined the burden of proof and focused on a close analysis of the jury instructions. The contents of the opening statement and closing argument clearly lie within the professional judgment of counsel and, thus, cannot support a claim of ineffective assistance of counsel.'

"317 Ill. App. 3d at 484, 251 Ill. Dec. 202, 740 N.E.2d at 40. See also Gregory G. Sarno, Annotation, Adequacy of Defense

97

Counsel's Representation of Criminal Client Regarding
Argument, 6 A.L.R. 4th 16 (1981)."

Washington v. State, 95 So. 3d 26, 54 (Ala. Crim. App. 2012) (emphasis

added).

In addition, although Scheuing alleged that his counsel were

ineffective during the penalty-phase opening statement for revealing to

the jury what offenses he was on parole for in Georgia, the United States

Court of Appeals for the Eleventh Circuit has explained that openness

and honesty may be reasonable strategic choices, holding that

> "[o]penness in a jury trial is a move that can pay off. We have
> previously recognized the reasonableness of being
> forthcoming with the jury. See Straight v. Wainwright, 772
> F.2d 674, 681 (11th Cir. 1985) (counsel was not ineffective for
> failing to object to a question on cross-examination, where
> counsel was pursuing a plan of being 'truthful and open' with
> the jury). Moreover, we have recognized that it can be
> reasonable to let incriminating evidence come to the jury's
> attention. See Atkins v. Singletary, 965 F.2d 952, 960 (11th
> Cir. 1992) ..."

Walls v. Buss, 658 F.3d 1274, 1279 (11th Cir. 2011).

In dismissing Scheuing's claim that his counsel were ineffective for

revealing during penalty-phase opening statement the prior convictions

that led to Scheuing's being on parole, the circuit court found counsel's

approach to be a reasonable one because, "[r]ather than have jurors

wonder or speculate about what crimes Scheuing had committed in Georgia that landed him on parole, his counsel informed them that he had been convicted of nonviolent crimes." (C. 1260-61.) We agree with the circuit court's conclusion.

We also note that Scheuing appears to assume that his prior convictions were "irrelevant to any aggravating circumstances and thus inadmissible at trial" because they did not involve "violence" (Scheuing's brief, p. 42), but he does not explain how he reaches this conclusion. He cites three cases that purportedly support this conclusion, but two of those cases do not appear to address this issue. The third case, Knight v. State, 907 So. 2d 470 (Ala. Crim. App. 2004), supports the opposite conclusion. Knight had been convicted of two prior nonviolent felonies for receiving stolen property and theft of property, and this Court held that, based upon Knight's being on probation for those offenses when he committed capital murder, the trial court correctly found that "[f]or purposes of § 13A-5-49 (1), Ala. Code 1975, Knight was under a sentence of imprisonment when he committed this offense." Id. at 483. Therefore, Scheuing's conclusion that his prior offenses were irrelevant to any

aggravating circumstance does not appear to be supported by the record or by legal authority.

As to Scheuing's claim that his counsel were ineffective during opening statements because his counsel failed "to explain how any of the mitigating circumstances affected [Scheuing]," Scheuing did not allege precisely what his counsel should have told the jury about how the mitigating circumstances affected him.  Because Scheuing's claim did not satisfy the full factual-pleading requirements of Rule 32.3 and Rule 32.6(b), Ala. R. Crim. P., the circuit court did not err when it dismissed this allegation as insufficiently pleaded.

<u>I.B.6.</u>

Scheuing argues that his counsel were ineffective for "fail[ing] to subject the prosecution's penalty phase presentation to adequate adversarial testing."  (Scheuing's brief, p. 42.)  The totality of Scheuing's argument on appeal is as follows:

> "The prosecution called two witnesses to the stand during its initial penalty phase presentation.  Had counsel been effective and objected to the prosecution's irrelevant and improper evidence, the trial court would have been required to exclude almost the entirety of the prosecution's presentation.  Had counsel investigated and presented available mitigating evidence regarding Scheuing's reasons for leaving Georgia while on parole, this evidence would have

lessened the weight the jury gave to one of the aggravating circumstances."

(Scheuing's brief, p. 42.)

Scheuing's three-sentence "argument" falls well short of satisfying the requirements of Rule 28(a)(10), Ala. R. App. P. Because Scheuing makes no argument that addresses the circuit court's findings and cites no authority as to this claim of ineffective assistance of counsel, Scheuing has waived and abandoned this argument on appeal, and we will not address it. See Washington v. State, 95 So. 3d 26, 75 (Ala. Crim. App. 2012) (holding that Washington's failure to comply with Rule 28(a)(10) resulted in a waiver of his argument on appeal).

### I.B.7.

Scheuing argues that his counsel were ineffective for "fail[ing] to prevent the prosecution from introducing in admissible [sic] evidence that was highly prejudicial." (Scheuing's brief, p. 43.)

Scheuing made the same claim in his third amended petition. According to Scheuing, his counsel failed to object to the penalty-phase testimony of Blake Lewis, Scheuing's parole officer, who "testified that [Scheuing] had been convicted of twelve counts of theft by taking a motor vehicle, eighteen counts of entering an auto, one count of escape, and one

count of possession of a firearm by a convicted felon." (C. 926.) Scheuing claimed that, "[b]ecause none of these offenses were violent felonies, they were irrelevant to the aggravating circumstances and thus inadmissible." (C. 927.) Scheuing said that, if his counsel had objected to this testimony, "the trial court would have been obligated to sustain their objection and prevent the prosecution from informing the jury of the nature of [his] prior convictions." (C. 927.)

Scheuing also alleged that his counsel were ineffective when they failed to object to Dr. Glen King's penalty-phase testimony that, he said, "was highly prejudicial." (C. 928.) According to Scheuing, Dr. King "testified at length about his evaluation of [Scheuing's] competency to stand trial and his mental state and told the jury about statements [Scheuing] made during the evaluation and his conclusions based on those statements." (C. 927.) Scheuing said that Dr. King testified that he had diagnosed Scheuing with "antisocial personality disorder," "testified to statements [Scheuing] made during the evaluation about the charged offense, including statements about planning the charged offense and trying to avoid apprehension, and indicated that [Scheuing] lied about his prior criminal history." (C. 927-28 (citations omitted).)

Scheuing claimed that Dr. King's testimony was inadmissible under Rule 11.2(2), Ala. R. Crim. P., and that, if his counsel had objected to Dr. King's testimony, "the trial court would have been legally required to bar his testimony and there is a reasonable probability that the outcome of the penalty phase would have been different." (C. 928.)

Finally, Scheuing alleged that his counsel were ineffective for not rebutting Lewis's testimony "that there was no reason for [Scheuing] to leave Georgia while on parole there" because, he said, they "did not adequately contact, interview, and present [Scheuing's] family, friends, or neighbors, including Sarah Counts, Trevor Atkins, Michael Atkins, and Tara Atkins, all of whom were available and willing to testify about [Scheuing's] time on parole and his decision to leave Georgia." (C. 929.) Scheuing claimed that his counsel's

> "decision not to investigate and present evidence of [Scheuing's] time on parole and his decision to leave Georgia was unreasonable. Given that counsel knew that the prosecution would rely on this period to establish one of the two aggravating circumstances and that the jury would hear about [Scheuing] leaving Georgia while on parole, it was important for counsel to offer an explanation for why [Scheuing] did not remain in Georgia."

(C. 932.)

This circuit court dismissed Scheuing's claim concerning Lewis's testimony about Scheuing's prior convictions as follows:

> "First, Scheuing claims that his trial counsel were ineffective for not objecting when his parole officer from Georgia identified the underlying felony convictions that Scheuing was on parole for when he left Georgia to come to Alabama.
>
> "As stated above, Scheuing's trial counsel's strategy during the penalty phase, and indeed the entire trial, was to be open and honest with the jury. To that end, Scheuing's counsel let the jurors know that he was on parole for stealing cars rather than have jurors wonder if he had been convicted of some other violent offenses.
>
> "This Court finds that this ineffectiveness claim is without merit; therefore, it is denied."

(C. 1262-63 (citations omitted).)

The circuit court dismissed Scheuing's claim concerning Dr. King's testimony as follows:

> "Second, Scheuing claims that his trial counsel were ineffective for not objecting when the prosecution called psychologist Dr. Glen King to testify regarding the results of his pre-trial mental evaluation and about statements that Scheuing made to Dr. King concerning the offense.
>
> "'Objections are a matter of trial strategy, and an appellant must overcome the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance," that is, the presumption that the challenged action "might be considered sound trial strategy."' Moore v. State, 659 So. 2d 205, 209 (Ala. Crim. App. 1994) (citation

omitted). Scheuing's trial counsel elicited testimony from Dr. King about the medications used to treat ADHD. Scheuing's counsel also had Dr. King explain to the jury that in treating ADHD it was essential for parents to take their child to the doctor to monitor the disorder and to keep medication in the child's system. Scheuing's counsel used the State's own expert to support their penalty-phase theory that his adoptive mother failed to properly have his ADHD treated which, in turn, led to him developing antisocial personality. Scheuing's counsel also referred to Dr. King's testimony during closing arguments. This Court finds that Scheuing's counsel's performance related to Dr. King was neither deficient nor prejudicial.

"This Court finds that this ineffectiveness claim is without merit; therefore, it is denied. Rule 32.7(d), ALA. R. CRIM. P.

"This Court further finds that Scheuing's ineffectiveness claim related to Dr. King testifying about statements that he made about the offense is without merit because Scheuing's statements to law enforcement officers in Iowa and Alabama detailing the offense were admitted into evidence prior to Dr. King testifying. Therefore, Dr. King's testimony concerning statements that Scheuing made about the offense would have been, at most, cumulative to other evidence. Any error in Dr. King testifying about statements Scheuing made about the offense would have been, at most, harmless. See State v. Kerley, 260 So. 3d 891, 902 (Ala. Crim. App. 2017) ('Because counsel's deficient performance was harmless, Kerley has not satisfied his burden of proving that he was prejudiced as required by Strickland.').

"This Court finds that this ineffectiveness claim is without merit; therefore, it is denied. Rule 32.7(d), ALA. R. CRIM. P."

(C. 1263-65 (some citations omitted).)

As to Scheuing's claim that his counsel were ineffective because they failed to present witnesses who could testify as to why Scheuing left Georgia while he was on parole, the circuit court found as follows:

"Third, Scheuing claims that his trial counsel were ineffective for not presenting testimony from certain individuals to show why he left Georgia without permission from his parole officer.

"Scheuing fails to cite in his petition any legal authority indicating that testimony from his family members and friends would have been admissible, i.e., relevant, to show why he left Georgia without his parole officer's permission. See Daniel [v. State], 86 So. 3d [405,] 438 [(Ala. Crim. App. 2011)] ('Counsel is not ineffective for failing to present inadmissible evidence.'). Even assuming that such testimony would have been admissible, Scheuing does not even attempt to explain how or why testimony regarding his reasons for leaving Georgia would in any way have been mitigating at the penalty phase of his trial.

"This Court finds that this ineffectiveness claim is deficiently pleaded; therefore, it is summarily dismissed. Rule 32.7(d), ALA. R. CRIM. P."

(C. 1265 (some citations omitted).)

On appeal, Scheuing merely reiterates the allegations he raised in his petition. Scheuing does not address the reasons the circuit court gave in its order for summarily dismissing this claim. And, again, Scheuing does not mention the circuit court's order in his argument on appeal. This Court has held that similar failures render an appellate brief

noncompliant with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Woodward, 276 So. 3d at 746. Because Scheuing's argument on appeal does not comply with Rule 28(a)(10), he has waived his argument.

Even so, the circuit court properly dismissed this claim of ineffective assistance of counsel. First, the circuit court properly dismissed Scheuing's claim that his counsel were ineffective when they failed to object to Lewis's testimony identifying the felony offenses that Scheuing was on parole for at the time he left Georgia and came to Alabama. This Court has held that

> "[g]enerally, 'whether to object is a matter of trial strategy.' Davis v. State, 9 So. 3d 539, 552 (Ala. Crim. App. 2008).

> " 'The fact that counsel did not object at every possible instance does not mean that the appellant did not receive adequate representation. O'Neil v. State, 605 So. 2d 1247, 1250 (Ala. Cr. App. 1992). Objections are a matter of trial strategy, and an appellant must overcome the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance," that is, the presumption that the challenged action "might be considered sound trial strategy." Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693 (1984).'

> "Moore v. State, 659 So. 2d 205, 209 (Ala. Crim. App. 1994)."

107

Clark v. State, 196 So. 3d 285, 313-14 (Ala. Crim. App. 2015).

Here, Scheuing's allegation that his counsel were ineffective for failing to object to Lewis's testimony listing Scheuing's prior convictions does not, as the circuit court correctly found, overcome the presumption that his counsel made a reasonable, strategic decision not to object to Lewis's testimony. In fact, the circuit court provided a plausible and reasonable strategy for not objecting to Lewis's testimony -- specifically, that his counsel wanted to "be open and honest with the jury" and "let the jurors know that he was on parole for stealing cars rather than have jurors wonder if he had been convicted of some other violent offenses." (C. 1263.) Because Scheuing failed to plead facts overcoming the strong presumption that his counsel's failure to object to Lewis's testimony was based on trial strategy, the circuit court did not err when it dismissed this claim. Scheuing also failed to plead adequate facts showing how he was prejudiced by his trial counsel's alleged deficient performance.

Furthermore, Scheuing's argument regarding testimony about his prior convictions is based on an improper premise. His one-paragraph argument on appeal and the legal authority supporting that argument are summarized by Scheuing as follows: "Because none of these [prior]

108

offenses were violent felonies, they were irrelevant to the aggravating circumstances.  Stewart, 659 So. 2d 122; Knight, 907 So. 2d 470; Bush, 523 So. 2d 538."  (Scheuing's brief, p. 43.)  As noted above in relation to Scheuing's argument that his counsel should not have mentioned his prior offenses during the closing arguments of the penalty phase, Ex parte Stewart, 659 So. 2d 122 (Ala. 1993), and Bush v. State, 523 So. 2d 538 (Ala. Crim. App. 1988), do not address the issue Scheuing raises on appeal.  On the other hand, Knight v. State, 907 So. 2d 470 (Ala. Crim. App. 2004), does address the issue, but it does not support Scheuing's conclusion that the prior convictions were inadmissible because they were not violent offenses.  If the State had attempted to prove the aggravating circumstance that Scheuing had been "previously convicted of another capital offense or a felony involving the use or threat of violence to the person" as outlined in § 13A-5-49(2), Ala. Code 1975, the nature of Scheuing's prior convictions would have been relevant.  But the State did not seek enhancement under that provision.  The State proved that Scheuing's "capital offense was committed by a person under sentence of imprisonment" pursuant to § 13A-5-49(1), Ala. Code 1975.  Under this aggravating circumstance, it has never been required that a

person found to be "under sentence of imprisonment" be a violent offender. See Knight, 907 So. 2d 470, and Ex parte Burgess, 723 So. 2d 770, 772 (Ala. 1998) (noting that "[t]he 'sentence of imprisonment' that Burgess was under at the time of the murders was a two-year suspended sentence for … harassing communications" and that "the term 'sentence of imprisonment,' … 'does not exclude from its scope any category of criminal violations.' [Burgess v. State,] 723 So. 2d [742, 766 (Ala. Crim. App. 1997).]")  Therefore, the entire premise underlying this ineffective-assistance-of-counsel claim, that his prior convictions were inadmissible because they were not violent offenses, is incorrect.

Next, the circuit court properly dismissed Scheuing's claim that his counsel were ineffective for failing to object to Dr. King's testimony about the results of Scheuing's mental-health examination and about statements Scheuing had made about the offense during that examination.  As set out above, "[g]enerally, 'whether to object is a matter of trial strategy.' Davis v. State, 9 So. 3d 539, 552 (Ala. Crim. App. 2008)." Clark, 196 So. 3d at 313-14.  To sufficiently plead a claim that trial counsel were ineffective for failing to object to certain testimony, a Rule 32 petitioner must plead facts to overcome the strong "'presumption that

110

"counsel's conduct falls within the wide range of reasonable professional assistance," that is, the presumption that the challenged action "might be considered sound trial strategy." Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693 (1984).'" Clark, 196 So. 3d at 313-14 (quoting Moore v. State, 659 So. 2d 205, 209 (Ala. Crim. App. 1994)). As the circuit court found when it summarily dismissed Scheuing's claim that his counsel were ineffective for failing to object to Dr. King's testimony, Scheuing failed to overcome this strong presumption. Indeed, as to Dr. King's testimony about Scheuing's mental-health examination, his trial counsel "used the State's own expert to support their penalty-phase theory that his adoptive mother failed to properly have his ADHD treated which, in turn, led to him developing antisocial personality." (C. 1263-64.) In other words, Scheuing's trial counsel's decision not to object to Dr. King's testimony was based on trial strategy, and Scheuing provided the circuit court with no basis to overcome the presumption that counsel acted within the range of reasonable professional assistance. What is more, the circuit court correctly concluded that Scheuing's trial counsel's failure to object to Dr. King's testimony about statements that Scheuing had made to him about the crime did not prejudice Scheuing

111

because "Scheuing's statements to law enforcement officers in Iowa and Alabama detailing the offense were admitted into evidence prior to Dr. King testifying. Therefore, Dr. King's testimony concerning statements that Scheuing made about the offense would have been, at most, cumulative to other evidence." (C. 1264.) Scheuing did not address this finding in his briefs to this Court, and we agree with the circuit court's findings. Because Scheuing's counsel's failure to object to Dr. King's testimony about what Scheuing told him about the crime was, at most, harmless, Scheuing's counsel's alleged deficient performance did not prejudice him. See generally State v. Kerley, 260 So. 3d 891, 902 (Ala. Crim. App. 2017) ("Because counsel's deficient performance was harmless, Kerley has not satisfied his burden of proving that he was prejudiced as required by Strickland. 'Harmless error does not rise to the level of the prejudice required to satisfy the Strickland test.' Gaddy v. State, 952 So. 2d 1149, 1160 (Ala. Crim. App. 2006).").

Finally, the circuit court properly dismissed Scheuing's claim that his counsel were ineffective because they failed to present witnesses who could testify as to why Scheuing left Georgia while he was on parole. Indeed, although Scheuing alleged that his counsel should have called

112

several witnesses who he says "were available and willing to testify about [his] time on parole and his decision to leave Georgia" "to lessen the weight of the aggravating circumstances" that he was "under a sentence of imprisonment when he committed the offense" (C. 928-29), as the circuit court correctly found, Scheuing pleaded no facts showing how this testimony would have been admissible at his sentencing hearing or how that evidence would have actually been mitigating. What is more, although Scheuing claimed in his third-amended petition that his counsel's failure to present this evidence was "unreasonable," (C. 932), Scheuing did not plead any facts showing how he was prejudiced by his counsel's failure to present that evidence. Accordingly, the circuit court did not err in dismissing these claims.

### I.B.8.

Scheuing argues that his counsel were ineffective for "fail[ing] to object to the trial court's erroneous jury instructions." (Scheuing's brief, p. 46.)

In his third amended petition, Scheuing alleged that his trial counsel were ineffective during the penalty phase when they did not object to the trial court's penalty-phase instructions about the weighing

of aggravating and mitigating circumstances. (C. 941.) Specifically, Scheuing claimed:

"Alabama Code [1975,] § 13A-5-46(e)(2)[,] requires a recommendation of life imprisonment without parole 'if the jury determines that one or more aggravating circumstances ... exist but do not outweigh the mitigating circumstances.' Alabama Code [1975,] § 13A-5-46(e)(3)[,] allows a recommendation of death only if 'the jury determines that one or more aggravating circumstances ... exist and that they outweigh the mitigating circumstances.' Each of the three times the court discussed the weighing process; however, it merely instructed the jury to weigh the aggravating and mitigating circumstances against each other, without providing the guidance required by the Code on how jurors should vote once they complete the weighing process. (R. 629, 717, 727.) The trial court's failure prevented jurors from understanding when they should recommend a sentence of life or death. See, e.g., Ex parte McNabb, 887 So. 2d 998, 1004 (Ala. 2004); Ex parte Bryant, 951 So. 2d 724, 730 (Ala. 2002); California v. Brown, 479 U.S. 538, 541 (1987) (requiring clear and structured instructions)."

(C. 941.) Scheuing claimed that he was prejudiced by his counsel's failure because, he argues, had the jury been properly instructed on "how to weigh mitigating and aggravating evidence at the penalty phase, there is a reasonable probability that at least one more juror would have returned a life verdict." (C. 942.)

The circuit court summarily dismissed this claim as follows:

"Scheuing raised a similar issue underlying this ineffectiveness claim on direct appeal, arguing that the circuit

114

court erred by failing to instruct jurors what to do if the weight of the aggravating and mitigating circumstances was equal. Scheuing, 161 So. 3d at 293. The Alabama Court of Criminal Appeals held that the court properly instructed jurors they could recommend a sentence of death 'only if the aggravating circumstances outweighed the mitigating circumstances.' Id. The Court of Criminal Appeals went on to hold that 'no error, much less plain error, occurred.' Id. Because there was no error in the court's penalty-phase jury instruction concerning the process of weighing aggravating and mitigating circumstances, Scheuing cannot demonstrate his trial counsel's performance was deficient and that he was prejudiced under Strickland. See Beckworth [v. State], 190 So. 3d [527,] 562 [(Ala. Crim. App. 2009)]."

(C. 1266.)

On appeal, Scheuing copies verbatim the allegation he raised in his petition. Scheuing does not address the reasons the circuit court gave in its order for summarily dismissing this claim. This Court finds that the reasons provided by the circuit court in dismissing this claim were correct. As the circuit court found, this Court addressed Scheuing's substantive argument on appeal concerning the adequacy of the trial court's penalty-phase instruction as to how the jury should weigh the aggravating and mitigating circumstances. This Court explained:

"Here, during the penalty phase, the circuit court instructed the jurors:

"'So now then, ladies and gentlemen, if after a full and fair consideration of all of the evidence

115

in the case if you then are convinced beyond a reasonable doubt that there is at least one aggravating circumstance, that it exists, and you are convinced that the aggravating circumstance or circumstances outweigh the mitigating circumstance or circumstances, then [death] would be the verdict form that you would then return.'

"(R. 1298.)

"'Now, on the other hand, ladies and gentlemen, if after a full and fair consideration of all of the evidence if you're not convinced beyond a reasonable doubt that the aggravating circumstance or circumstances outweigh the mitigating circumstance or circumstances, if any, your verdict then would be: "We, the jury, recommend that the defendant, Jesse Earl Scheuing, be punished by life imprisonment without parole."'

"(R. 1299.)

"Here, the circuit court's instructions clearly informed the jury that it could recommend a sentence of death only if the aggravating circumstances outweighed the mitigating circumstances. [Ex parte] Mills, 62 So. 3d [574,] 601 [(Ala. 2010)]. Therefore, no error, much less plain error, occurred. See Rule 45A, Ala. R. App. P."

Scheuing, 161 So. 3d at 293.

Because this Court held that the circuit court properly instructed the jury about weighing the aggravating and mitigating circumstances and when it would be appropriate to impose a death sentence, Scheuing's

116

counsel were not ineffective for failing to object to the circuit court's instructions about weighing aggravating and mitigating circumstances. See, e.g., Carruth, 165 So. 3d at 645 (holding that counsel "were not ineffective for failing to raise a baseless objection"). Thus, the circuit court properly dismissed this claim.

I.B.9.

Scheuing argues that his counsel were ineffective for "fail[ing] to present evidence during the judge's sentencing phase." (Scheuing's brief, p. 47.) The totality of Scheuing's argument on appeal -- reproduced here verbatim -- is as follows:

> "After Scheuing had received a jury verdict recommending life without parole, the only way he would receive a death sentence was the possibility of this Court overriding the jury's verdict. (C. 20; R. 736.) During this Court's sentencing hearing, trial counsel was deficient for presenting no meaningful evidence. In sentencing Mr. Scheuing to death, this Court failed to find extensive mitigating evidence present in Mr. Scheuing's background. Notably, the trial court's sentencing order made no meaningful findings regarding the extent of Mr. Scheuing's mental-health history; the impact of Mr. Scheuing's adoption; Mr. Scheuing's positive community relationships; his loving relationship with his daughter; his positive work history; or his positive institutional record.
>
> "Had counsel presented any additional evidence discussed above during this Court's sentencing proceeding, there is a reasonable probability that Mr. Scheuing would not

117

have been sentenced to death. <u>Strickland</u>, 466 U.S. 668; <u>Daniels</u>, 650 So. 2d at 552; <u>Hyde</u>, 950 So. 2d at 355-56."

(Scheuing's brief, pp. 47-48.)

Scheuing's argument on appeal is a verbatim copy of the claim he raised in his third amended petition, even to the extent of retaining his references to "<u>this</u> Court overriding" and "<u>this</u> Court's sentencing hearing" rather than referencing the actions of the circuit court. (<u>Compare</u> Scheuing's brief, pp. 47-48 <u>with</u> C. 942-43 (emphasis added).) This Court has held that similar failures render an appellate brief noncompliant with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. <u>See, e.g.</u>, <u>Woodward</u>, 276 So. 3d at 746 (holding that Woodward's argument on appeal did not satisfy Rule 28(a)(10) and was, therefore, deemed waived when he "reassert[ed] this claim from his petition, but he ma[de] no argument regarding why he believe[d] the circuit court's findings were incorrect"). Because Scheuing's argument on appeal does not comply with Rule 28(a)(10), he has waived his argument.

Even so, the circuit court properly dismissed this claim of ineffective assistance of counsel. The circuit court summarily dismissed this claim, finding that "the basis of this ineffectiveness claim is factually

and legally incorrect" because the "record proves that the jury recommended, by a vote of ten to two, that the circuit court sentence Scheuing to death." (C. 1267.) We agree with the circuit court. Scheuing's claim of ineffective assistance of counsel is premised on his assertion that his counsel failed to present evidence to the circuit court that would have kept it from overriding the jury's life-imprisonment-without-parole recommendation; the jury, however, did not recommend that Scheuing be sentenced to life imprisonment without the possibility of parole. Rather, the jury recommended by a vote of 10 to 2 that Scheuing be sentenced to death. Thus, Scheuing's claim of ineffective assistance of counsel is, as the circuit court put it, "factually and legally incorrect."

Regardless, Scheuing's claim that his counsel were ineffective for failing to present additional or different evidence to the circuit court during the judicial sentencing hearing is without merit. Recently, this Court explained:

> "In State v. Mitchell, [377] So. 3d [94,] at [129-30 (Ala. Crim. App. 2022)], we held:
>
>> "'[U]nder Alabama's capital-sentencing scheme in effect at the time of Mitchell's trial and sentencing, this Court in Boyd v. State, 746 So. 2d 364, 398

119

(Ala. Crim. App. 1999), held: "Section 13A-5-47, Ala. Code 1975, <u>does not provide for the presentation of additional mitigation evidence at sentencing</u> by the trial court. Therefore, trial counsel did not err in failing to do so." (Emphasis added.) Although in <u>Woodward v. State</u>, 123 So. 3d 989, 1034 (Ala. Crim. App. 2011), this Court characterized that holding in <u>Boyd</u> as "obiter dictum," six months before the decision in <u>Woodward</u> (and five years after Mitchell's trial), this Court reaffirmed <u>Boyd</u> in <u>Miller v. State</u>, 99 So. 3d 349, 424 (Ala. Crim. App. 2011), quoting with approval the following from the trial court's order denying relief: "'[T]rial counsel could not be ineffective for failing to present additional mitigation evidence during the sentencing hearing because [former] "Section 13A-5-47, Ala. Code 1975, does not provide for the presentation of additional mitigation evidence at sentencing by the trial court." <u>Boyd v. State</u>, 746 So. 2d 364, 398 (Ala. Crim. App. 1999).'" Simply put, it would not have been unreasonable for Mitchell's counsel to rely on this Court's holding in <u>Boyd</u>, and the circuit court thus erred in concluding that trial counsel was ineffective for not presenting additional mitigating evidence at the separate sentencing hearing before the trial court. Cf. <u>State v. Tarver</u>, 629 So. 2d 14, 18-19 (Ala. Crim. App. 1993) ("Counsel's performance cannot be deemed ineffective for failing to forecast changes in the law.").'

<u>Burgess v. State</u>, [Ms. CR-19-1040, June 23, 2023] ___ So. 3d ___,

___ (Ala. Crim. App. 2023) (footnote omitted).

Here, Scheuing was tried in 2010, years after this Court's decision in <u>Boyd</u> but before this Court's decision in <u>Woodward</u> characterizing <u>Boyd</u> as "obiter dictum." So, as was the case in <u>Burgess</u> and in <u>State v. Mitchell</u>, 377 So. 3d 94 (Ala. Crim. App. 2022), "'it would not have been unreasonable for [Scheuing's] counsel to rely on this Court's holding in <u>Boyd</u>.'" <u>Id</u>. (quoting <u>Mitchell</u>, 377 So. 3d at 129). Thus, Scheuing's claim of ineffective assistance of counsel is without merit.

I.B.10.

Finally, Scheuing argues that "cumulative effect of counsel's deficient performance at the penalty and sentencing phases prejudiced him." (Scheuing's brief, p. 48.) This Court has previously addressed "cumulative-effect" arguments as follows:

> "'Taylor ... contends that the allegations offered in support of a claim of ineffective assistance of counsel must be considered cumulatively, and he cites <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). However, this Court has noted: "Other states and federal courts are not in agreement as to whether the 'cumulative effect' analysis applies to <u>Strickland[ v. Washington</u>, 466 U.S. 668 (1984),] claims"; this Court has also stated: "We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel." <u>Brooks v. State</u>, 929 So. 2d 491, 514 (Ala. Crim. App. 2005), quoted

121

in <u>Scott v. State</u>, [262] So. 3d [1239, 1253] (Ala. Crim. App. 2010); see also <u>McNabb v. State</u>, 991 So. 2d 313, 332 (Ala. Crim. App. 2007); and <u>Hunt v. State</u>, 940 So. 2d 1041, 1071 (Ala. Crim. App. 2005). More to the point, however, is the fact that even when a cumulative-effect analysis is considered, only claims that are properly pleaded and not otherwise due to be summarily dismissed are considered in that analysis. A cumulative-effect analysis does not eliminate the pleading requirements established in Rule 32, Ala. R. Crim. P. An analysis of claims of ineffective assistance of counsel, including a cumulative-effect analysis, is performed only on properly pleaded claims that are not summarily dismissed for pleading deficiencies or on procedural grounds. Therefore, even if a cumulative-effect analysis were required by Alabama law, that factor would not eliminate Taylor's obligation to plead each claim of ineffective assistance of counsel in compliance with the directives of Rule 32.'

"<u>Taylor v. State</u>, 157 So.3d 131, 140 (Ala. Crim. App. 2010)."

<u>White v. State</u>, 343 So. 3d 1150, 1176 (Ala. Crim. App. 2019). Here, even "[i]f we were to evaluate the cumulative effect of the instances of alleged ineffective assistance of counsel, we would find that [Scheuing's] substantial rights had not been injuriously affected, because we have found no error in the instances argued in the petition." <u>McNabb v. State</u>, 991 So. 2d 313, 332 (Ala. Crim. App. 2007).

122

## II. Claims of Trial-Court Error

Scheuing argues that the trial court erred (1) when it failed "to find [his] severe mental illness as a mitigating circumstance and to consider other mental-health evidence as mitigating" (Scheuing's brief, p. 51), and (2) when it failed to "consider [his] youth and undeveloped brain as nonstatutory mitigating factors." (Scheuing's brief, p. 51-52). Scheuing's arguments are without merit.

In his third amended petition, Scheuing alleged that the "trial court's factual findings during [his] sentencing hearing ignored constitutional requirements to avoid arbitrary and unfair death sentencing." (C. 945.) Specifically, Scheuing alleged that the "trial court's failure to find [his] severe mental illness as a mitigating circumstance and to consider other mental-health evidence as mitigating entitles [him] to sentencing relief" and that the "trial court's failure to consider [his] youth and cognitive development entitled him to sentencing relief." (C. 945-46.)

The circuit court dismissed Scheuing's claims regarding alleged trial-court error as precluded under Rule 32.2(a)(3) and (5), Ala. R. Crim. P. Rule 32.2(a)(3) states that a "petitioner will not be given relief under

this rule based upon any ground … [w]hich could have been but was not raised at trial, unless the ground for relief" is a jurisdictional issue. Likewise, Rule 32.2(a)(5) states that a "petitioner will not be given relief under this rule based upon any ground … [w]hich could have been but was not raised on appeal, unless the ground for relief" is a jurisdictional issue.

On appeal, Scheuing merely reiterates the allegations he raised in his petition. Scheuing does not address the reasons the circuit court gave in its order for summarily dismissing these claims. The circuit court properly dismissed these claims because they are nonjurisdictional and, thus, subject to the grounds of preclusion set out in Rule 32.2, Ala. R. Crim. P. The circuit court therefore properly dismissed these claims as precluded under Rule 32.2(a)(3) and (5) because they could have been, but were not, raised at trial or on appeal. See also White v. State, 343 So. 3d 1150, 1191 (Ala. Crim. App. 2019) (holding that the claims that the trial court failed to consider White's youth, cognitive development, and mental illness as mitigating circumstances were precluded because they could have been raised at trial or on direct appeal).

III. Scheuing's "As Applied" Challenges to the Death Penalty

Finally, Scheuing argues that the "death penalty as applied to [him] is unconstitutional" for the following reasons:

- His "death sentence violates the Sixth and Fourteenth Amendments under Hurst v. Florida, 136 S. Ct. 616 (2016)."  (Scheuing's brief, p. 53.)

- "Alabama's capital-sentencing statute violates the Sixth and Fourteenth Amendments because it allows the imposition of death when juries do not unanimously find necessary facts to reach a unanimous verdict." (Scheuing's brief, p. 56.)

- His "death sentence is constitutionally and statutorily invalid because Alabama became the last state to reject advisory jury verdicts in capital sentencing." (Scheuing's brief, p. 60.)

- "Executing a judicially sentenced prisoner would violate the Federal Constitution's and the Alabama Constitution's Equal Protection and Substantive Due Process Clauses."  (Scheuing's brief, p. 62.)

- "Society's evolving standards of decency rejects its use on people with long-term severe mental illness." (Scheuing's brief, p. 64.)

- "It is unconstitutional to impose the death penalty upon the severely mentally ill because there is a developing national consensus against their execution." (Scheuing's brief, p. 70.)

- He "is categorically excluded from the death penalty because the scientific community now recognizes that teenagers' brains have not matured and developed." (Scheuing's brief, p. 71.)

- He "is categorically excluded from the death penalty because killing him violates his due-process right to human dignity." (Scheuing's brief, p. 72.)

- "The imposition of death violates the Eighth Amendment's Cruel and Unusual Clause and the Fourteenth Amendment's Due Process Clause generally." (Scheuing's brief, p. 74.)

- "Evolving standards of decency prohibit under the Eighth Amendment's prohibition against cruel and unusual punishment from executing [him] because he is severely mentally ill." (Scheuing's brief, p. 75.)

The circuit court summarily dismissed all but one of those claims as precluded under Rule 32.2(a)(3) and (5), Ala. R. Crim. P., "because [those claims] could have been but [were] not raised at trial and because [those claims] could have been but [were] not raised on direct appeal." (C. 1269, 1272, 1273, and 1275.) Scheuing's remaining claim -- that his "death sentence is constitutionally and statutorily invalid because Alabama became the last state to reject advisory jury verdicts in capital sentencing" (Scheuing's brief, p. 60) -- was summarily dismissed on the merits.

126

On appeal, Scheuing reiterates the allegations he raised in his petition, without addressing the procedural bars that the circuit court held applied to those issues. As this Court has explained, claims concerning the imposition of the death penalty or claims concerning the constitutionality of a death sentence are nonjurisdictional claims that are subject to the grounds of preclusion set out in Rule 32.2, Ala. R. Crim. P. See, e.g., McNair v. State, 706 So. 2d 828, 854 (Ala. Crim. App. 1997) ("The appellant's contention that his death sentence should be vacated because his execution would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments was precluded because it could have been but was not raised at trial or on appeal. Rule 32.2(a)(3) and (5)"), and Wimbley v. State, 387 So. 3d 213, 260 (Ala. Crim. App. 2022) (holding that Wimbley's claims that his death sentence is unconstitutional because "he 'is severely mentally ill' and that '[e]volving standards of decency prohibit [the State] under the Eighth Amendment's prohibition against cruel and unusual punishment from executing [him] because he is severely mentally ill'" are nonjurisdictional claims subject to the grounds of preclusion set out in Rule 32.2.). Because Scheuing could have raised those claims at trial or on appeal, but did not, the

circuit court correctly concluded that his claims were precluded under Rule 32.2(a)(3) and Rule 32.2(a)(5).

Scheuing's claim that his "death sentence is constitutionally and statutorily invalid because Alabama became the last state to reject advisory jury verdicts in capital sentencing" (Scheuing's brief, p. 60) is, as the circuit court found, without merit.

Scheuing raised this same claim in the circuit court. According to Scheuing, because the Alabama Legislature repealed a circuit court's ability to override a jury's sentencing recommendation in a capital-murder case and entrusted capital sentencing to a jury,

> "[a]n execution carried out in the face of this judgment would plainly be cruel and unusual punishment, violate Alabama's statutory prohibition against arbitrary death sentences, and the constitutional prohibitions against arbitrary criminal laws unsupported by legitimate penological objectives. Such an execution also would be unprecedented; a search of the historical record has revealed no jurisdiction in the history of the United States that executed an offender after renouncing capital punishment."

(C. 969.)

The circuit court dismissed Scheuing's claim as without merit finding that,

> "[d]uring the 2017 session of the Alabama Legislature, Senate Bill 16, codified at 2017 Alabama Laws Act 2017-131,

128

was enacted on April 11, 2017, and amended sections 13A-5-45, -46, and -47 of the Code of Alabama to remove the option for judicial override in capital sentencing. There is no question as to the non-retroactivity of the act. Section Two of the act states, in relevant part, that: 'This act ... shall not apply retroactively to any defendant who has previously been convicted of capital murder and sentenced to death prior to the effective date of this act.'

"Even if Scheuing could show that Senate Bill 16 had retroactive application, it would have no effect on his death sentence. Scheuing's jury recommended that he be sentenced to death, and the circuit court accepted that recommendation. Since this is not an override case, even if Scheuing's jury had ultimately sentenced him, his sentence would be exactly what it is now -- death."

(C. 1217.) We agree with the circuit court.

Indeed, Scheuing's allegation about the legislature's decision to repeal judicial override and replace it with a capital-sentencing scheme that places the capital-sentencing authority with the jury is premised on his belief that the legislature's decision means that it has determined that the judicial-override procedure has no "legitimate penological objective"; that the new capital-sentencing procedure rendered the old capital-sentencing procedure unconstitutional; and that changing capital-sentencing schemes was a renunciation of capital punishment. Those premises are incorrect.

129

First, the legislature's decision to repeal judicial sentencing in favor of jury sentencing in the capital-sentencing procedures does not mean that the legislature renounced capital punishment under that scheme or that it had concluded that the judicial-sentencing procedure has no "legitimate penological objective." Indeed, as this Court recently held, when the legislature enacted the new jury-sentencing scheme for capital murder, it expressly preserved sentences imposed under the judicial-sentencing procedure by not applying the new scheme retroactively, and it expressly declined to apply the jury-sentencing scheme to any defendant who had been charged with, but not yet convicted of, capital murder before the effective date of the act. See Sykes v. State, [Ms. CR-2022-0546, May 3, 2024] ___ So. 3d ____, ____ (Ala. Crim. App. 2024) (noting that "[§] 13A-5-47.1, Ala. Code 1975, states that this new capital-sentencing scheme 'shall apply to any defendant who is charged with capital murder after April 11, 2017, and shall not apply retroactively to any defendant who has previously been convicted of capital murder and sentenced to death prior to April 11, 2017,'" and holding that the judicial-override procedure applied to Sykes because "[t]he new capital sentencing scheme is triggered by the date on which a defendant is

130

charged with capital murder. Sykes was first charged with capital murder in the death of [the victim] in May 2015, well before the effective date of the new capital-sentencing scheme -- April 11, 2017").

Second, the legislature's adopting a jury-sentencing procedure does not render the judicial-sentencing procedure unconstitutional. Indeed, no court has ever held Alabama's judicial-sentencing procedure to be unconstitutional. As this Court has explained:

> "The Alabama Supreme Court in Ex parte Bohannon, 222 So. 3d 525 (Ala. 2016), held that Alabama's override scheme remained constitutional after Hurst[v. Florida, 577 U.S. 92 (2016)], and this Court has repeatedly held that Alabama's capital-sentencing scheme, including judicial override, remained constitutional after Hurst. See, e.g., Hicks v. State, 378 So. 3d 1071, 1127 (Ala. Crim. App. 2019); Lindsay v. State, 326 So. 3d 1, 55 (Ala. Crim. App. 2019); Knight v. State, 300 So. 3d 76, 128-30 (Ala. Crim. App. 2018)."

State v. Mitchell, 377 So. 3d 94, 125 (Ala. Crim. App. 2022).

Finally, as the circuit court noted in its order dismissing this claim, Scheuing is not being treated any differently from a person who is sentenced to death by a jury under the new jury-sentencing scheme because "this is not an override case, even if Scheuing's jury had ultimately sentenced him, his sentence would be exactly what it is now

131

-- death." (C. 1271.) Thus, the circuit court properly dismissed this claim as without merit.

<u>Conclusion</u>

Based on these reasons, Scheuing is due no relief on his claims and the judgment of the circuit court is affirmed.

AFFIRMED.

Windom, P.J., and McCool and Minor, JJ., concur. Kellum, J., concurs in the result.